## S. E. BIGHAM v. W. S. CLUBB.

### Decided March 14, 1906.

**1.—Contested Election—Youthful Appearance of Voter—Not Evidence.**

A judge trying a contested election, without a jury, excluded a vote because of the youthful appearance of the voter, and this, although the voter had testified that he was twenty-one years of age and there was no evidence to the contrary. Held, error. The findings of a court should rest upon the testimony offered alone, and not upon information gained by some other method, whether by observation or otherwise.

**2.—Illegal Votes—Allegata et Probata.**

Only the ground alleged, as making the vote illegal, can be the basis of a verdict or judgment, whatever other fact might develope on the trial.

**3.—Payment of Poll Tax—Loss of Hand or Foot.**

The law exempts those from the payment of poll tax who have lost a hand or foot. It can not be said that loss of a portion of the hand or foot would bring the person within the exemption.

**4.—Changing Official Ballot—Section 63, Election Law of 1903, Construed.**

A ballot prepared by tearing off the National ticket of one political party and attaching it to the State ticket of another political party is illegal.

Appeal from the District Court of Jefferson. Tried below before Hon. W. H. Pope.

*D. W. Glasscock* and *R. L. White*, for appellant.—The court erred in its findings of fact that "R. Orange, alias Owens, was under the age of twenty-one (21) years when he cast his ballot in said election;"

because, contrary to and not supported by the evidence, and because the uncontradicted evidence as appears from the statement of facts herein, shows that at the time the said R. Orange so cast his ballot he was twenty-one (21) years of age, and that he became twenty-one years old February 2, 1904. Clark v. McGrath, 22 S. W. Rep., 527.

The court erred in its findings of fact that R. Orange was under the age of twenty-one years at the time he cast his ballot, and that "I find this not only upon the testimony offered, but upon the physical appearance of the said R. Orange, alias Owens, himself, who testified on the trial hereof, it was perfectly clear and apparent that said R. Orange was a boy not more than eighteen years of age;" because it was error for the court to make such finding upon the opinion of the judge as to the physical appearance of said elector, there being no evidence whatever showing what such physical appearance was. Hunter v. State, 18 Texas Crim. Apps., 448; McGuire v. State, 15 S. W. Rep., 917; Ihinger v. State, 53 Ind., 251; 1 Wharton on Evidence, 276.

The court erred in its findings of fact that R. Orange was under the age of twenty-one years at the time he cast his ballot; because no such allegation was made or issue raised by the pleadings, and there was nothing in the pleadings to support such findings, the only issue being whether the elector was subject to and paid his poll tax, contestants alleging that he was subject to pay same. Rev. Stats., art 1803; Owens v. State, 64 Texas, 510; State v. Thompson, 30 S. W. Rep., 728; Texas & Pac. Ry. v. French, 86 Texas, 96; Tinsley v. Penniman, 83 Texas, 57; Lewis v. Hatton, 86 Texas, 535; Pacific Exp. Co. v. Darnell, 62 Texas, 641; Shipman v. Fulcrod, 42 Texas, 249; Clark v. McGrath, 22 S. W. Rep., 527.

An elector who removes from one precinct to another in the same county is entitled to vote at any general election in the precinct of his new residence, no matter how short the term of such new residence. Rev. Stats., title 36, chap. 9; Acts 1903, sec. 28.

The court erred in its judgment herein in counting the ballots cast by Tom Duckett and Jesse Garland as legal ballots for W. S. Clubb, contestant, and refusing to deduct same from his total vote, because the illegality thereof was alleged and admitted by both contestant and contestee and the only issue raised by the pleadings was, for whom said electors cast their ballots and it appearing that said two ballots were cast for W. S. Clubb, contestant. Rev. Stats., art. 1803; Graham v. Henry, 17 Texas, 164; Hill v. Allison, 51 Texas, 390; 11 Am. and Eng. Ency. of Law, p. 488; State v. Thompson, 30 S. W. Rep., 728; Moore v. Sharp, 41 S. W. Rep., 587.

The statutory provision that persons "who have lost one hand or foot" are exempt from payment of poll tax, is to be construed agreeably to the dictates of common sense; and does not require absolute literal amputation of the member. An elector who has permanently lost the use of a hand or foot by suffering such serious injury thereto as to practically destroy same and be forever deprived of the benefit thereof, comes within the exemption and the fair intent and meaning of the law. The injuries of W. C. Holst, D. W. Crenshaw, and Dave Stone come within the meaning of the law, and they were each exempt thereunder from payment of the poll tax, and, therefore, their ballots were

legal, and each should be counted for appellant. Rev. Stats., art. 5048; Kottwitz v. Alexander, 34 Texas, 713; Russell v. Farquhar, 55 Texas, 355; Harrington v. Galveston Co., 1 W. & W., 793; State v. Phillips, 63 Texas, 391.

All statutes tending to limit the citizen in his exercise of this right (suffrage) should be liberally construed in his favor. Owens v. State, 64 Texas, 509; Williams v. State, 69 Texas, 372; Bowers v. Smith, 20 S. W. Rep., 103; Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 599; Edwards v. James, 7 Texas, 382.

Where the right to vote depends upon making certain proof before the election officers, the evidence must show that such proof was made; and the lack of such proof can not be supplied by evidence that the officers knew that the citizen was a legal voter, or that they gave insufficient reasons for refusing the vote. 10 Am. and Eng. Ency. of Law, p. 845; McLean v. Brookhead, 48 Cong. H. Rep., 2613; Rev. Stats., title 36, chap. 9; secs. 61, 62, 63, 64, 114.

It appearing from the uncontradicted evidence as set forth in statement of facts herein, that the elector F. W. Goodell was legally entitled to vote and did vote and cast a legal ballot at said election at voting precinct No. 11 for contestee, the court erred in refusing to count said ballot for this contestee and in rendering judgment accordingly. King v. State, 70 S. W. Rep., 1021; Mechem on Pub. Off., chap. 5, par. 191; 10 Am. and Eng. Ency. of Law, p. 731; Wildman v. Anderson, 17 Kan., 344; Edwards v. Logan, 70 S. W. Rep., 852; Owens v. State, 64 Texas, 502; State v. Phillips, 63 Texas, 391; State v. Mahnche, 41 S. W. Rep., 185.

*McDowell & Duffie,* for appellee.—The court is not bound to accept the positive testimony of a witness as true, when there is evidence or circumstances tending to show it is not true. Nor is the court bound to accept the uncontradicted evidence of an interested witness. Mercantile Banking Co. v. Landa, 40 S. W. Rep., 406; Franklin Life Ins. Co. v. Villeneuve, 68 S. W. Rep., 203.

While it is true, it is alleged that the said Orange was subject to payment of poll tax, it is also charged that the vote cast by him was illegal and that he had no right in law to vote. The court, upon the trial, had a right, and it was its duty, to reject said vote if same was found to be illegal. Little v. State, 75 Texas, 621.

The evidence in this instance showing that the voter, F. W. Goodell, though possessed of all legal qualifications, failed to comply with the law in casting his ballot in that he used two ballots, a Republican and a Democratic ballot, and pasted these two together, folded them together, and after scratching the name of appellee and writing the name of appellant instead thereon on the Democratic ballot, leaving the balance of said ballot untouched, the court did not err in refusing to count same for appellant, and the court's failure to file conclusions of law and fact on this point, if error is harmless. Election Law, Acts 1905, sec. 53.

FLY, Associate Justice.—This is a contest for the office of county commissioner of precinct number 4, Jefferson County, instituted by ap-

pellee.   In the original petition it was alleged that at an election held in said county and precinct on November 8, 1904, appellant and appellee were candidates for the office of county commissioner, that there were three voting precincts in the commissioner's precinct, LaBelle or number 11, Hampshire or number 12, and Fannett or number 13; that at the first named (LaBelle) thirty-three ballots were cast, at the second (Hampshire) fifteen ballots were cast and at the third (Fannett) forty ballots were cast, making an aggregate of eighty-eight ballots, eighty-five of which were cast for either appellant or appellee.   That according to the face of the returns appellant received forty-five votes and appellee forty votes and the certificate of election was issued to the former.   It was admitted by appellee that the election at the Fannett and LaBelle boxes were in all things fair and in compliance with law, but that the illegal proceedings complained of occurred at the Hampshire box where only fifteen votes were polled.   It was alleged that at the last named box Joseph B. Roberts, who resided in precinct number 16, P. R. Williams, who resided in precinct number 9, J. G. Garland, who resided in precinct number 12, John M. Adams, who resided in precinct number 9, Aaron Palmer, who resided in precinct number 13, and Tom Buckett, who did not reside in precinct number 11, and who had not paid his poll tax, were all illegally permitted to vote and voted for appellant.   It was further alleged that Douglas Briggs, R. Orange, Abe Williams, Carl Coppock, W. C. Holst, Dave Stone and D. W. Crenshaw, each of whom was subject to pay a poll tax, and were not exempt under the law from such payment, but who did not pay their poll tax prior to February 1, 1904, or at any other time, were permitted to vote and each cast his vote for appellant, and that if the illegal votes had not been cast appellant would have received only thirty-two votes and appellee forty votes.   In a supplemental petition it was alleged that Joseph Gallier, a legal voter, who would have cast his vote for appellee, was denied the privilege of voting by the officers of the election.

Appellant answered by general denial, and specially denied each of the allegations as to illegal votes being polled, and attacked the votes received by appellee at the two other boxes in the precinct.

The cause was tried by the court, without a jury, and judgment was rendered that each of the candidates had received forty votes and that another election should be ordered.   The trial judge filed his conclusions of law and fact and there is also a statement of facts in the record.

The first, second and third assignments of error attack the finding of the court that "R. Orange, alias Owen, was under twenty-one years of age when he cast his vote in said election," because, (1) the uncontradicted evidence showed that he was over twenty-one; (2) because the court based its finding upon the physical appearance of Orange when there was no evidence of what his appearance was, and (3) because there was no allegation that Orange was under twenty-one years of age, the only attack on his vote being on the ground that he had not paid his poll tax.   There was no proof that tended to show that the voter was under twenty-one years of age.   He swore that his father told him that he was twenty-one on February 2, preceding the election in November, and there was not a word of testimony to contradict his evidence.   He made the necessary affidavit and having become twenty-one after the

first of February and not being a resident of a city of ten thousand inhabitants or more, he had the right to vote without a certificate of exemption. (Secs. 26 and 37, Gen. Laws 1903, pp. 138-139.)

The court did not have the authority to arbitrarily set aside the testimony of a witness, as he must have done in this case. There was no fact in evidence that contradicted Orange and the court evidently relied to some extent on the appearance of the witness as evidence upon which to base his finding as to his age. The appearance of persons is often deceptive and it is not the strongest class of testimony even when it is proved, and when left to the secret, unfettered opinion of a judge or jury it can not be sanctioned at all. The judge states, however, that he makes his finding "not only upon the testimony offered, but upon the physical appearance of the said R. Orange, alias Owens, himself." The findings of a court should rest upon the "testimony offered" alone, and not upon information gained by some other method, whether by observation or otherwise. In the case of Smith v. State, 42 Texas, 448, the jury went out and viewed a sow, alleged to have been stolen and Judge Roberts quaintly said: "How they performed this office, what fact they discovered, what conclusion they arrived at, and how far the personal knowledge of the fact in issue then acquired, if any, influenced their verdict, are not written in the record, and must be something wholly unknown in the trial of this case, both in the court below and in this court, as the sow was not brought into court, nor sent up here with the transcript of the record." We do know in this case that the appearance of the witness had much to do with the finding of the court, but how he managed to arrive at his conclusion does not appear. It is not shown that the witness had a youthful appearance, that he was exceptionally small, or that there was an absence of beard, or manly voice, or of any other indicia of manhood. Appellant was not given the benefit of the evidence upon which the court was resting its finding, and consequently had no chance to rebut it. If witnesses had sworn that the appearance of the voter was youthful, appellant might have found witnesses to contradict them, but he could not meet the secret conclusions locked in the breast of the judge.

There was no attack made on the vote of Orange because of his being under twenty-one years of age in the pleadings of appellee, and the court was not authorized to inquire into that matter. On the other hand it was alleged that Orange was "within the age limit under the law," which must necessarily have meant that he was between twenty-one and sixty years of age, and was subject to pay a poll tax, and the ground of attack was a failure to pay the poll tax. The action of the court, in not only inquiring into the question of age, but in actually resting his judgment on it, was in utter disregard of the axiom, as old as systematized law, that a party is not allowed to plead one case and make out a different one by proof. Or as stated by Judge Story: "The cause must stand before the court to be heard *secundum allegata et probata.*" What is said in this connection applies with equal force to the voter, Abe Williams, whose ballot was declared illegal because he lived in another precinct, when his vote was attacked only on the ground that he had not paid his poll tax. The proof showed that he was exempt from payment of poll tax and was a resident of the precinct in which

he voted. There was no allegation that Williams had lived in a city of ten thousand inhabitants and that he did not have an exemption certificate.

It was alleged by appellee that J. G. Garland and Tom Duckett did not reside in the precinct in which they voted, and that the latter, though subject to payment thereof, had not paid his poll tax, and yet in the face of that allegation the court counted the ballots for appellee. The answer of appellant did not put in issue the allegations as to the illegality but alleged that they were counted for appellee. Having attacked the legality of the two votes, appellee should not have received the benefit of them. (Moore v. Sharp (Tenn.), 41 S. W. Rep., 587.) That case is directly in point.

The proof showed that W. C. Holst had lost three fingers and part of the fore finger but had not lost the palm and thumb. The law exempts those from payment of poll tax who have lost a hand or foot. It can not be said that loss of a portion of the hand or foot would bring the person within the exemption mentioned. It may be that the disability would be just as great as though the hand or foot was gone, but courts have no authority to extend the terms of the law beyond its plain provisions. The same can be said of D. W. Crenshaw, who had lost the first two fingers from his hand and whose third finger was stiff in the second joint, and of Dave Stone, who had a large sore on one of his ankles, and the flesh was sloughing off. The fact that the foot should have been amputated did not constitute him a person who had lost a foot. We think the three votes were properly excluded. It may be that the injuries to the hands and the foot were such as to greatly impair their usefulness, but the loss of the members is what constitutes the exemption and not the maiming of them. The word "lost," as used in the statute, must be taken in its ordinary acceptation, and when we speak of a person losing a limb we mean that it is gone and not that it is injured or mutilated. A man may lose the use of a limb and not lose the limb. If the word "lost," as used in the statute, is held to mean the absence of three fingers, it could be held to mean the loss of one finger and so on.

In section 63 of the election law of 1903 it is provided that the judge of the election shall deliver to each qualified voter one of each of the official ballots upon the blank side of which the presiding judge shall have previously written his signature, and the voter shall immediately repair to a voting booth and select the ballot he wishes to vote and prepare the same by striking out the name of any candidate thereon for whom he does not desire to vote, and inserting the name of his choice underneath. After the preparation of his ballot he is required to fold it so as to conceal the printing on it and so as to expose the name of the presiding judge; and shall also fold the ballots not voted, and shall hand the ballot he desires to vote to the numbering judge and the others to another judge. We think the mode of voting prescribed should be substantially followed by the voter and that it was never contemplated that two official ballots could be cut in two and the part of one be attached to the part of the other, and that the only manner of changing the names on an official ballot is by their erasure and the inserting of others, as provided by statute. It follows that the vote

of Goodell, who tore the national ticket of one political party off and attached it to the state ticket of another political party, was properly rejected by the officers of the election.

We do not think the evidence was sufficient to show that the vote of Joseph Gallier was rejected by the officers of the election. Under the view taken by the court of the whole evidence, it would not matter whether his vote was improperly rejected or not as adding or omitting his vote would not change the result in any manner.

The court found that appellant received forty legal ballots, and held that the votes of Orange, Williams, Holst, Stone and Crenshaw, five in all, were illegally counted for him. He found that, with the addition of the votes of Garland and Duckett, which were alleged by appellee to have been illegally cast, appellee had also received forty votes, making a tie. We are of the opinion, however, as hereinbefore indicated, that only three of the votes, those of Holst, Stone and Crenshaw, should have been excluded, and that appellant received forty-two votes. Deducting the votes of Garland and Duckett, which appellee should not have received, from his vote, and he was entitled to thirty-eight votes. Appellant having received a clear majority of the votes should be declared entitled to the office.

The judgment of the District Court is reversed and judgment here rendered that appellee take nothing by his suit and that appellant recover all costs of this court and the lower court in this behalf expended.

*Reversed and rendered.*