## CLARENCE B. MERCHANT'S CASE.

### Franklin.    Opinion April 8, 1919.

*Interpretation of R. S., Chap. 50, Sec. 16, as bearing upon the meaning of the word*
*"lost" and the phrase "lose use of" as used in the statute.*

Claim under the Workmen's Compensation Act. The injury consisted of a laceration of the back of the left hand which affected the extensor muscles controlling the third and fourth fingers, and rendered them practically useless.

The only issue is whether the claimant has "lost" these two fingers within the contemplation of R. S., Chap. 50, Sec. 16, and should receive the compensation specified therein or whether he has suffered a partial disability and should be compensated as specified in Section 15.

*Held:*

1.   That this is a question purely of statutory construction and the word "loss" must be interpreted in the sense in which it is commonly understood, taking into consideration the context and the subject matter.

2.   That under Section 16, which provides for compensation for the "loss" of a member or of a portion of a member, the statute contemplates actual physical severance, and not merely loss of use.

3.   That under this construction the plaintiff is not entitled to the compensation which might be awarded for the loss of two fingers, and the decision of the Chairman of the Industrial Commission was without error.

Appeal from the decision of the Industrial Commission.    Judgment in accordance with opinion.

Case stated in opinion.

*Sumner P. Mills*, for applicant.

*Charles P. Conners, and L. E. Henry*, for respondents.

SITTING:  CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

CORNISH, C. J.   This claimant under the Workmen's Compensation Act was an employee of the Maine and New Hampshire Granite Corporation and met with an accident on November 21st, 1917. The injury consisted of a laceration of the back of the left hand, which affected the extensor muscles controlling the third and fourth fingers,

the third finger being drawn toward the palm of the hand at an angle of about forty-five degrees, and the fourth finger at an angle of about ninety degrees. These two fingers were thereby rendered practically useless.

It is agreed that the injury arose out of and in the course of the employment and that the earning capacity of the claimant, who is a painter, has not been diminished by the accident. The real and only issue is whether the claimant has "lost" these two fingers within the contemplation of R. S., Chap. 50, Sec. 16, and should receive the compensation specified therein, to wit: "For the loss of the third finger, one-half the average weekly wages during eighteen weeks. For the loss of the fourth finger, . . . . one-half the average weekly wages during fifteen weeks;" or whether he has suffered a partial disability and should be compensated as provided in Section 15, the basis of compensation being the difference in his earning capacity before and after the accident.

The claimant contends for the former construction and urges that the loss of the use of the third and fourth fingers must be construed as a loss of those fingers which entitles him to the specified amounts, without regard to the question whether his earning capacity has or has not been lessened. The Chairman of the Industrial Commission overruled this contention and fixed the amount of damages under Section 15. The correctness of this ruling is before this court in proper proceedings so far as the record shows and we think it must be sustained.

This question is one solely of statutory construction and in construing this statute, the words are to be interpreted in the sense in which they are commonly understood "according to the common meaning of the language." R. S., Chap. 1, Sec. 6, paragraph 1, taking into consideration the context and the subject matter relative to which they are employed. Let us apply this familiar rule.

Apart from the context of the statute, the "loss" of a member in the ordinary acceptation of the term implies a physical separation. To lose, in its primary sense, is "to part from or be separated from," Standard Dic. When in ordinary conversation it is said that one has lost his hand or his arm or his leg, nothing else is understood than an actual severance. It is true that for the sufferer the loss of the use of a member may be equivalent to the loss of the member itself so long as the disuse remains, but the two things are quite distinct and if one

has lost the use of a member it would be so described and never as the loss of the member. "It may be the disability would be as great as though the hand or foot was gone but the Courts have no authority to extend the terms of the law beyond its plain provisions," *Bigham* v. *Clubb*, 42 Texas, Cir. App., 312, 95 S. W., 675, a case involving exemption from the payment of a poll tax because of the "loss" of a hand or foot.

Analyzing the statute under consideration, we find that the common meaning of the language is preserved. Sec. 14 of R. S., Chap. 50, covers compensation for total disability, that is, while the actual incapacity for work is total, and prescribes the method of computation. There is added a provision as to what might be termed, presumptive total incapacity: "In the following cases, it shall for the purposes of this act, be conclusively presumed that the injury resulted in permanent total disability, to wit: The total and irrevocable loss of sight in both eyes, the loss of both feet at or above the ankle, the loss of both hands at or above the wrist, the loss of one hand and one foot, an injury to the spine resulting in permanent and complete paralysis of the legs or arms" etc. This language is most significant as distinguishing sharply between loss and loss of use and as specifying the one or the other according as the one or the other is intended. Thus the first clause does not say the loss of both eyes, which would mean removal, but the total and irrevocable loss of sight in both eyes, which is but another expression for total loss of use. The loss of the eye is one thing, the loss of sight which means the loss of the use of the eye is another. The second clause provides for the loss of both feet at or above the ankle. This admits of no other construction than an amputation at or above a certain point. So of the next clause "the loss of one hand at or above the wrist;" while the last clause "an injury to the spine resulting in permanent and complete paralysis of the legs or arms" again recognizes the loss of use as distinguished from actual loss. Otherwise it might simply have read the loss of the legs or the arms.

Section 15 provides for compensation in case of partial disability. In Sec. 16, under which the plaintiff claims, the word "loss" is used in the same sense as in Section 14, and as there, is equivalent to severance or amputation. That Section is entitled "schedule of accidents provided for" and again certain accidents are arbitrarily specified as entitling the injured party to a certain fixed sum during a certain

fixed number of weeks, and are deemed to create a total disability for the period specified, whether they do in fact or not. They are injuries of such a nature that they are made to automatically carry with them certain fixed amounts for a stated period, viz: "For the loss of a thumb, one-half the weekly wages during fifty weeks" and then follow the amounts for loss of the first finger, the second finger, the first toe, the second toe, etc. .

It would be presumed that the word "loss" should have the same meaning in this section as in Section 14, as they are parts of the same act, even if there were no internal and independent evidence to confirm it. But such evidence exists. For instance, not only are there provisions for loss of a thumb, of a finger and of a toe, but also for the loss of the first phalange of a thumb, of a finger or of a toe which shall be considered as a loss of one-half of such thumb, finger or toe, while the loss of more than one phalange shall be considered the loss of the entire thumb or finger or toe. This, as phrased, must contemplate severance. Here too, as in Section 14, the idea of severance is apparent from the several clauses concerning the loss of an arm or any part above the wrist, for the loss of a leg or any part above the ankle, etc. And in the last clause the distinction is again clearly made when it specifies that "for the loss of one eye, or the reduction of the sight of an eye. . . . . to one-tenth of the normal vision" one-half the average wages for a hundred weeks shall be awarded. Were there no difference between loss and loss of use, there was no need of this careful phrasing. Throughout these sections when loss of use without removal or severance is contemplated, it is so stated in unambiguous words and when "loss" is used it means loss in the ordinary acceptation of the term, that is, the physical loss of a member.

It may well be that in fixing an arbitrary compensation for the loss of these various parts the Legislature purposely refrained from extending these provisions to loss of use in all but the two excepted instances before referred to, for the reason that a use which might be deemed lost at the beginning might be regained in whole or in part long before the expiration of the arbitrarily fixed period, while the loss by severance is irreparable. Some uncertainty might exist with regard to the one, none in regard to the other.

Our attention has been called by the claimant to various cases where a loss of use has been deemed equivalent to loss. These cases, however, arose under certificates issued by fraternal beneficiary societies, or policies of insurance issued by health or accident associations and the plaintiff's rights were based upon the language of the particular contracts. Such contracts are always held to be construed in favor of the insured.

No case has been cited to us, nor have we found any arising under the Workmen's Compensation Act which holds that the "loss of use" should be given the full effect of "loss." On the other hand, there is approved authority sustaining our conclusion under Workmen's Compensation Acts. *Packer* v. *Olds Motor Works*, 195 Mich., 497, 162 N. W., 80; *Adomites* v. *Royal Furniture Co.*, 196 Mich., 498; *Northwestern Fuel Co.* v. *Industrial Commission*, 161 Wis., 450; Ann. Cas., 1918 A 533, and extended note, the introduction of which is as follows: "The general rule deducible from the cases cited throughout this note is that unless a Workmen's Compensation Act provides that when a member is so impaired as to be permanently incapable of use compensation shall be awarded as for the 'loss' thereof, 'loss' of a member is construed to mean loss by severance only." See also the definitions in *Grammici* v. *Zinn*, 219 N. Y., 322.

Our conclusion, therefore, is that the ruling of the Chairman of the Industrial Commission was without error and the entry must be

*Appeal dismissed.*