SPRING CANYON COAL CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4749.   Decided April 12, 1929.   (277 P. 206.)

*Cheney, Jensen, Marr & Stephens,* of Salt Lake City, for plaintiff.

*George P. Parker,* Atty. Gen., and *F. A. Trottier,* Asst. Atty. Gen., for defendants.

ELIAS HANSEN, J.

This is a proceeding to review an award of compensation granted to Jesus Aspatia by the Industrial Commission of

Utah on account of injuries sustained by him in the course of his employment by the Spring Canyon Coal Company. In this opinion the Spring Canyon Coal Company will be referred to as the company, the Industrial Commission as the commission, and Jesus Aspatia as the applicant.

The company is a self-insurer. It does not deny liability for the injuries suffered by the applicant, but it attacks the authority of the commission, under the facts disclosed by the evidence, to grant the applicant compensation for life.

There is no dispute in the evidence concerning the facts. On August 3, 1925, the applicant was engaged in mining coal in one of the coal mines of the company in Carbon county, Utah. On that day two cars were sent in to where the applicant was at work so fast that they jumped off the track and knocked out the props that were holding the roof rock in place; thereupon the roof rock fell down upon the applicant, seriously injuring his back. In the terminology of the medical profession, he sustained a "fracture spinus process 2nd lumbar vertebra; fracture transverse process of 3rd lumbar vertebra and of body of same (compression fracture)."

The applicant was earning approximately $50 per week at the time of his injury; he was removed to a hospital immediately after the accident; he remained in the hospital about five months; after he left the hospital he wore a cast about his body. Under date of September 18, 1926, the commission, by resolution, granted the applicant permission to visit Mexico and remain there a year. The applicant went to Mexico and apparently remained about a year. Upon his return the cast was removed.

Dr. S. C. Baldwin, who attended the applicant, testified at the hearing before the commission. His testimony as to the nature and extent of applicant's injuries is substantially as follows: That the applicant's condition has become fixed; that he had a fractured third lumbar vertebra, which

is located a little below the waist of the body; that the injury has left both legs partially paralyzed; one leg is more paralyzed than the other; he can walk with the aid of canes; he can raise his right leg slightly, but the other one he drags along on the ground; he often walks on the street with the aid of canes; it is doubtful if he can go up or down stairs; he was not injured above the third lumbar; his arms were not affected by the injury; his disability is not to exceed 75 per cent., because he still has the use of his body from the waist up, and the use of his arms; he also has the use of his legs to stand on and get around on with the aid of canes; he can do work such as shoe repairing or basket weaving where he can sit down if he knows how to do this class of work. The applicant says he is not in pain. He has lost the use of both legs industrially; that is to say, there is nothing he can do that requires the use of his legs, except to drag himself around. A person who has both legs amputated between the knee and the hip, so that he can wear artificial limbs, is in a better condition than the applicant for performing labor. The applicant cannot walk without the aid of canes, but he can arise from a sitting position in a chair and stand without the use of canes.

The applicant also testified before the commission. His testimony as to his physical condition generally corroborates the testimony of Dr. Baldwin. He further testified that he went to Mexico and returned alone. The conductor helped him get onto the train. He testified that he cannot take a bath without some one to help him; that he has always worked in a mine and has never worked at a job sitting down. When asked by a representative of the company if he would like to go back to work for the company "picking boney," if the company would arrange for him to sit down, he responded that he could not do that work because of stiffness of his back, and because he had to be with his family in Mexico; that he has a wife and six children in Mexico, the oldest of whom is 12 years and the youngest 2 years of age.

It is further made to appear that the company has paid the applicant the maximum compensation allowed by the Workmen's Compensation Law since the time of his injury. Upon substantially the foregoing evidence the commission ordered that the company pay the applicant the sum of $16 per week during the remainder of his life. The company here seeks to have the award vacated because, as claimed by it, the evidence does not support the award.

The parties to this proceeding are divided primarily upon the construction that should be given the Workmen's Compensation Law. The provisions involved are Laws Utah 1919, c. 63, §§ 3137, 3138, and 3139. They read as follows:

3137. "In case of temporary disability, the employee shall receive 60 per cent of his average weekly wages so long as such disability is total, not to exceed a miximum of $16.00 per week, and not less than a minimum of $7.00 per week; but in no case to continue for more than six years from the date of injury, or to exceed $5,000.00."

3138. "Where the injury causes partial disability for work, the employee shall receive, during such disability and for a period of not to exceed six years beginning on the fourth day of disability, a weekly compensation equal to 60 per cent of the difference between his average weekly wages before the accident and the weekly wages he is able to earn thereafter, but not more than $16.00 a week. In no case shall the weekly payments continue after the disability ends, or death of the injured person, and in case the partial disability begins after a period of total disability the period of total disability shall be deducted from such total period of compensation. In the case of the following injuries the compensation shall be 60 per cent of the average weekly wages, but not more than $16.00 to be paid weekly for the periods stated against such injuries respectively, and shall be in addition to the compensation hereinbefore provided for temporary total disability, to wit:

"For loss of: * * *"

Then follows a long list of specific amounts to be paid for an arm or a part thereof, a hand or a part thereof, a thumb or a part thereof, a finger or a part thereof, a toe or a part thereof, for one eye by enucleation, an eye by

total blindness.   Included within the schedule is the following:

"One leg at or so near the hip joint as to preclude the use of an artificial limb, 180 weeks.

"One leg at or above the knee where stump remains sufficient to permit the use of an artificial limb, 150 weeks.

"One leg between the knee and ankle, 140 weeks."

After completing the list, this section continues:

"Any other disfigurement, or the loss of bodily function not otherwise provided for herein, such period of compensation as the commission shall deem equitable and in proportion to compensation in other cases not exceeding two hundred weeks.

"The amounts specified in this section are all subject to the limitation as to the maximum weekly amount payable as hereinbefore specified in this Section, and in no event shall more than a total of $5,000.00 be required to be paid."

3139.  "In cases of permanent total disability, the award shall be 60 per cent of the average weekly wages for five years from date of injury, and thereafter 45 per cent of such average weekly wages until the death of such person so totally disabled, but not to exceed a maximum of $16.00 per week and not less than a minimum of $7.00 per week.  The loss of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, shall constitute total and permanent disability, to be compensated according to the provisions of this Section."

It is the company's contention that the injury which the applicant received is compensable under the provisions of section 3138 and not section 3139.   It is the applicant's contention that his injuries bring him within the provisions of section 3139, and that he is entitled to the compensation therein provided for.

The commission took the view that the words "loss of both legs" as used in section 3139 should be construed to include and be equivalent to the loss of the use of both legs; that the applicant had lost the use of both legs, and therefore he was entitled to an award of compensation for permanent total disability.   The commission based its conclusion upon the language used by this court in the case of the

*Aetna Life Insurance Co.* v. *Industrial Commission,* 64 Utah 230, 228 P. 1081. In that case the stipulated facts showed that Edward Rogers sustained a fracture of the neck of the right femur while he was working for the Ogden Pressed Brick & Tile Company. No other part of his body was injured. As a result of his injury he was confined in bed for approximately 4 weeks, after which he moved about by the use of crutches. The leg was not painful except when he bumped it into something or when he put his weight on it. At the time of the hearing before the commission the condition of Rogers' leg had become certain and fixed and had not changed since he got out of bed. He had totally lost the use of his leg. There was nothing in the stipulation of facts to indicate that Rogers was any worse off because he had totally lost the use of his leg than he would have been if his leg had been amputated. Rogers was paid compensation for a period of 200 weeks. The commission awarded compensation for a period of 6 years. This court vacated the award. In the course of the opinion this language was used:

"This court is also committed to the doctrine that the loss of the use or function of a member of the body is equivalent to the loss of such member. *Broderick* v. *Industrial Commission,* 63 Utah 210, 224 P. 876. In *Neglia* v. *Zimmerman* [206 App. Div. 634] 198 N. Y. S. 596, it is said: 'The loss of the use (function) of a member is equivalent to the loss of the member.' Indeed all of the courts concur in such a conclusion, except those which hold that the injured employe is not entitled to the full amount allowed for the loss of a member unless the member has actually been severed from the body. Such a holding, however, seems not to be in consonance with the spirit of our statute."

It will be seen that in the Aetna Life Insurance Co. case, *supra,* this court held that, in the absence of a showing that Rogers' useless leg was an impediment, a greater compensation could not legally be awarded for the loss of the use of his leg than would have been permitted by law if his leg had been amputated. We do not see how a different result could have been reached. The law fixed the amount of

compensation to be awarded for the loss of a leg by amputation. If the leg had been amputated, obviously, Rogers would have lost its use. A part is always some less and never greater than the whole.

In the case of *Broderick* v. *Industrial Commission*, supra, it was urged that Broderick, a coal miner by occupation, should be awarded a greater compensation because of an injury to one of his legs than he would be entitled to receive if he followed a vocation that did not require a sound leg. This court held against Broderick's contention. It was made to appear that because of an injury sustained in the course of his employment Broderick had suffered a loss of 25 per cent in the use of one leg between the knee and ankle. Our Workmen's Compensation Law then, as now, provided that an employee who sustains the loss of one leg between the knee and ankle should be awarded compensation for 140 weeks. The commission awarded Broderick compensation for 25 per cent of 140 weeks. This court affirmed the award. It was held that the commission in fixing a compensation "for the loss of a bodily function," not expressly fixed by law, but under the provision "in proportion to compensation in other cases," properly based the amount to be awarded for the loss of use upon the amount fixed by law for loss by severance. It will be observed that under the provision of section 3138 the commission is directed to grant compensation for "any other disfigurement, or the loss of bodily function not otherwise provided for herein" for such period as it "shall deem equitable and in proportion to compensation in other cases not exceeding two hundred weeks."

The other cases referred to are confined to those specified in section 3138. The commission is thus empowered by the express language of section 3138 to determine the relation that exists between loss of use of a member and a loss by severance. No such discretionary power is conferred upon the commission in cases coming under the provisions of section 3139. Thus, while the loss of the use of a member

may be equivalent to a loss by severance under the provisions of section 3138, it does not necessarily follow that the same rule should apply when the provisions of section 3139 are construed. Without further pursuing a discussion of the language used in the case of *Aetna Life Insurance Co.* v. *Industrial Commission,* supra, suffice it to say that we are of the opinion that the statements above quoted from that decision are dicta when applied to the construction that should be given to the provisions of section 3139. While the commission may well have felt bound by the language used by this court in the Aetna Life Insurance Co. Case, supra, in arriving at its conclusion in the instant case, such view is not permissible by this court. Dictum is not embraced within the rule of stare decisis. 15 C. J., § 344, p. 950, and cases cited in footnote.

Courts should ever be mindful that their duties are to construe the law and not to enact it. If mere dictum should be given the binding authority of the rule of stare decisis, the likelihood of courts enacting legislation would be greatly augmented. The construction that should be given the sentence, "The loss of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, shall constitute total and permanent disability," as used in section 3139, has not heretofore been construed by this court. Counsel for the respective parties in their able and exhaustive briefs have cited authorities from various jurisdictions where courts of last resort have construed the meaning of workmen's compensation laws, which provide for compensation for the partial or total loss of various members of the body. In some states the law expressly provides that the loss of the use of a member is equivalent to the loss of a member by severance; in other states the commission is granted a discretionary power to fix the compensation to be awarded for the loss of the use of a member, while in still other states, as in section 3139 of our Workmen's Compensation Act, the law fixes a specified amount for the loss of a member without any mention of the loss of the

use thereof. We have carefully examined the authorities submitted and have become convinced that the overwhelming weight of authority and the better reasoned cases involving the construction of workmen's compensation laws support the view that the loss of a member means the loss of severance; that, in the absence of language in the act indicating that the loss of the use of a member is equivalent to the loss of a member, the courts are not authorized to read such construction into the law. The most widely cited case upon this question is Merchant's Case, decided in 1919 by the Supreme Court of Maine, reported in 118 Me. 96, 106 A. 117. We quote the following from the decision:

"Apart from the context of the statute, the 'loss' of a member in the ordinary acceptation of the term implies a physical separation. To lose, in its primary sense, is 'to part from or be separated from,' Standard Dic. When in ordinary conversation it is said that one has lost his hand or his arm or his leg, nothing else is understood than an actual severance. It is true that for the sufferer the loss of the use of a member may be equivalent to the loss of the member itself so long as the disuse remains, but the two things are quite distinct and if one has lost the use of a member it would be so described and never as the loss of the member. 'It may be the disability would be as great as though the hand or foot was gone but the courts have no authority to extend the terms of the law beyond its plain provision,' *Bigham* v. *Clubb*, 42 Tex. Civ. App. 312, 95 S. W. 675. * * *"

In construing the statute "words and phrases are construed according to the context and the approved usage of the langauge." Comp. Laws Utah 1917, § 5847; *Miles* v. *Wells*, 22 Utah 55, 61 P. 534. It cannot well be said that Aspatia has lost both legs when, in facts, he has both legs. The fact that he has both legs belies the statement that he has lost both legs. The following additional authorities hold that the loss of a member means a loss by severance, and does not mean the loss of the use of a member: *In re Supple* v. *Erie R. Co.*, 180 App. Div. 135, 167 N. Y. S. 391; Ann. Cas. 1918A, 536, 18 A. L. R. 1350; *Northwestern*

*Fuel Co.* v. *Leipuis,* 161 Wis. 450, 152 N. W. 856, Ann. Cas. 1918A, 533; *Ballou* v. *Industrial Commission,* 296 Ill. 434, 129 N. E. 755; *Adomites* v. *Royal Furniture Co.,* 196 Mich. 498, 162 N. W. 965; *Carpenter* v. *Detroit Forging Co.,* 191 Mich 45, 157 N. W. 374; *Packer* v. *Olds Motor Works,* 195 Mich. 497, 162 N. W. 80; *Norwood* v. *Lake Bristeneau Oil Co.,* 145 La. 823, 83 So. 25. The facts in this case do not bring the applicant within that portion of section 3139 wherein it is provided:

"The loss of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, shall constitute total and permanent disability, to be compensated according to the provisions of this section."

It is also contended that the award of compensation to the applicant is authorized by that provision of section 3139 which reads:

"In cases of permanent total disability, the award shall be 60 per cent of the average weekly wages for five years from date of injury, and thereafter 45 per cent of such average weekly wages until the death of such person so totally disabled, but not exceed a maximum of $16.00 per week and not less than a minimum of $7.00 per week."

Counsel for applicant contends that the evidence brings him within this provision. The company contends to the contrary. Counsel for the company in the instant case refer us to the brief filed in the case of *Utah Fuel Co.* v. *Industrial Commission of Utah and Clyde A. Parry,* recently before this court, 273 P. 306. That case was not disposed of on its merits. In that case it was urged that the only permanent total disability provided for in section 3139 was that of "the loss of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof"; that, in the absence of a loss of severance or amputation of two of these specified members, no authority exists under our Workmen's Compensation Law to grant an award for permanent total disability. While

the point is not stressed in the brief filed in the instant case, the company apparently relies upon the argument presented in the brief of the Utah Fuel Company in the Parry Case. In a proper case the maxim, "expresio unius est exclusio alterius," is of controlling importance in construing a statute. The maxim, however, is not of universal application. It may be an aid in arriving at legislative intention, but may not be used to defeat the apparent intention of Legislature. *United States* v. *Barnes,* 222 U. S. 513, 32 S. Ct. 117, 56 L. Ed. 291; *People* v. *Gibson,* 53 Colo. 231, 125 P. 531, Ann. Cas. 1914B, 138; *State Public Utilities Commission* v. *Monarch Refrigerating Co.,* 267 Ill. 528, 108 N. E. 716, Ann. Cas. 1916A, 528; *State* v. *Cleveland,* 83 Ohio St. 61, 93 N. E. 467, 21 Ann. Cas. 1284; *State* v. *Standard Oil Co.,* 61 Or. 438, 123 P. 40, Ann. Cas. 1914B, 179; 2 Lewis' Sutherland Statutory Construction (2d Ed.) § 495; *Booth* v. *Midvale City,* 55 Utah 220, 184 P. 799.

It is a cardinal principle of uniform application in the construction or interpretation of a statute that the legislative intent as determined from the language used is of primary and controlling importance. When the language of a statute is plain and unambiguous, courts ∎ are bound by such language. They may not resort to rules of statutory construction and interpretation to defeat the clear and definite meaning of the language used in a statute. 25 R. C. L. §§ 216, 217, pp. 960, 961, and cases cited in the footnotes.

Among the other well-recognized rules applied in the construction of a statute are these: The language used must be read in a sense which harmonized with the general purposes and objects of the statute, 25 R. C. L. § 253, p. 1013; 2 Lewis' Sutherland Statutory Construc- ∎∎ tion (2d Ed.) §§ 368-390,, pp. 706-714. Prima facie, the same meaning will be given to a word or phrase used in different parts of a statute. Beal, Cardinal Rules of

Legal Interpretation (2d Ed.) p. 316; 25 R. C. L. § 238, p. 994; 2 Lewis' Sutherland Statutory Construction (2d Ed.) § 399, p. 758.

Applying these general rules of construction to our Workmen's Compensation Law, the conclusion is inevitable that the provisions of section 3139 authorize an award for permanent total disability in cases other than where the injured employee has sustained the "loss of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof." It is a matter of common knowledge that a person may be permanently and totally disabled, even though he retains his hands, arms, feet, legs, and eyes. The language of section 3139 provides for an award of compensation for cases of permanent total disability. No one who is permanently and totally disabled is expressly excluded from the benefits of its provisions. The fact that the Legislature has declared that the loss of any two of the specified members shall constitute permanent total disability is, in no way, inconsistent with a construction that in all "cases of permanent total disability" the injured employee shall be entitled to the award provided for in section 3139. That the purpose of the Legislature, in enacting the Workmen's Compensation Law, was to compensate employees who have been injured in the course of their employment is not open to doubt. It is also apparent that our Workmen's Compensation Law provides for what the Legislature deemed a just proportion between the nature of the injury and the amount of compensation to be awarded. A large award shall be paid for a serious injury, a small award for a slight injury. Section 3137 provides for compensation in case of temporary total disability without any attempt to define what shall, or what shall not, constitute temporary total disability. Section 3138 contains a general provision for an award for partial disability followed by a list of specific awards to be granted for the loss of specified members or parts of members of the body. The Legislature having made provision for temporary total disability, and

for permanent and temporary partial disability without regard to the loss of any member or part of any member of the body, it is quite improbable that it did not intend to make provision for permanent total disability, except in those specified cases wherein the injured employee has suffered the loss of two of the specified members. Such a construction offends against the rule that a statute must be construed in a sense which harmonizes with the general purposes and objects of the statute. If effect is given to words, "in case of temporary disability, the employee shall receive 60 per cent of his average weekly wages so long as such disability is total," etc., in section 3137, there is no good reason why effect should not be given to the words, "in cases of permanent total disability, the award shall be 60 per cent of the average weekly wages for five years from date of injury, and thereafter 45 per cent of such average weekly wages until the death of such person so totally disabled," etc., in section 3139. If effect is given to the general provision of section 3138 without regard to the compensation provided for the loss of the members or parts of members enumerated, there is no good reason why effect should not be given to the general provision of section 3139 without regard to the provision for compensation for the loss of the member specified therein. When it is made to appear as a fact that an employe has sustained an injury in the course of his employment, resulting in total permanent disability, such employee is entitled to an award of compensation as provided for in section 3139. The provision of section 3139, providing for compensation for the loss of any two of the specified members, is not exclusive.

It remains to be determined whether or not the evidence in the case at bar brings the applicant within the general provision of section 3139. It is not always an easy task to determine what constitutes total disability. It will rarely be found that two cases present the same facts. Keeping in mind the purposes of our Workmen's Compensation Law, it may be said generally that, where the

injured employee's earning power is wholly and permanently destroyed, and because of his injuries he is incapable of performing remunerative employment, such employee is permanently totally disabled. Stated conversely, if an injured employee is not prevented from securing and retaining employment because of his injuries, and if he can perform the duties of such employment without pain or suffering and without unduly endangering his health, life, or limb, then, and in such case, the employee is not totally disabled. To make out a case of total disability, the applicant is not required to show that he is incapacitated from performing any and all kinds of work. On the other hand, he is required to put forth an active effort to procure such employment as he is able to perform. If he is incapacitated from performing the kind of labor required in his former employment, but is able to perform the work of some other employment, he is not totally disabled. The following authorities support or tend to support such a general rule: 28 R. C. L. § 106, P. 820; L. R. A. 1916A, 145; *American Zinc Co. of Tennessee* v. *Lusk*, 148 Tenn. 220, 255 S. W. 39; *Employers' Liability Assurance Corporation* v. *Williams et al.* (Tex. Civ. App.) 293 S. W. 210; *United States Fidelity & Guaranty Co.* v. *Weir et al.* (Tex. Civ. App.) 286 S. W. 565; *Home Life & Accident Co.* v. *Corsey* (Tex. Civ. App.) 216 S. W. 464; *Bishop* v. *Millers' Indemnity Underwriters* (Tex. Civ. App.) 254 S. W. 411; *In re Burns*, 218 Mass. 8, 105 N. E. 601, Ann. Cas. 1916A, 787; *Roller* v. *Warren et al.*, 98 Vt. 514, 129 A. 168; *Employers Mutual Ins. Co. et al.* v. *Industrial Commission of Colorado*, 65 Colo. 283, 176 P. 314; *Dosen* v. *East Butte Copper Mining Co.*, 78 Mont. 579, 254 P. 880; *Moore* v. *Peet Bros. Manufacturing Co.*, 99 Kan. 443, 162 P. 295; *Sakamoto* v. *Kemmerer Coal Co.*, 36 Wyo. 325, 255 P. 356; *Consolidation Coal Co.* v. *Crislip et al.*, 217 Ky. 371, 289 S. W. 270.

The evidence in this case shows that the applicant has suffered a serious injury, but we are of the opinion that

there is no substantial competent evidence which brings him within the class of "permanent total disability." The case was disposed of upon the theory that the ▇▇▇ condition of applicant's legs entitled him to an award for permanent total disability, regardless of whether he was or was not able to secure and retain employment. It is a matter of common knowledge that persons with injuries similar to those sustained by the applicant are able to and do perform the duties of some kinds of employment. It cannot be said as a matter of law under our Workmen's Compensation of Law that one who has his legs partially paralyzed, as does the applicant, is unable to secure any kind of employment and perform the duties thereof. That phase of the case was not inquired into. It is contended on behalf of the applicant that the commission had before it the report of three doctors, to the effect that the applicant was permanently and totally disabled, and that such report supports the award. There are two reasons why the report cannot be held to support the award. The report is hearsay evidence, and it has become a well-established rule in this jurisdiction that hearsay evidence alone will not support an award of compensation. At the hearing counsel for the company inquired if the report of the doctors would be considered as evidence. One of the commissioners before whom the hearing was being held responded: "It is not (evidence), it has not been introduced as such any more than we would consider his application as evidence." Obviously in such case an award of compensation cannot be sustained by the report relied upon by the applicant.

The award is annulled. This cause is remanded back to the Industrial Commission for such further proceeding, not inconsistent with the views here expressed, as the commission shall deem proper.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.