## Nelson v. Kentucky River Stone & Sand Company.

### (Decided December 3, 1918.)

### Appeal from Anderson Circuit Court.

1.  Master and Servant—Workmen's Compensation Act—Findings of Fact by Board—Conclusiveness.—Under section 4935, Kentucky Statutes, all awards or orders of the Workmen's Compensation Board are, in the absence of fraud, conclusive and binding as to all questions of fact.

2.  Master and Servant—Workmen's Compensation Act—Appeal to Circuit Court—Introduction of New Evidence—Scope of Review. —On appeal to the circuit court from an award of the Workmen's Compensation Board, no new or additional evidence may be introduced except as to the fraud or misconduct of some person engaged in the administration of the act, and affecting the order, ruling or award, but the court shall otherwise hear the cause upon the record, or abstract thereof, as certified by the board, and shall dispose of the question in summary manner, its review being limited to determining whether or not: (1) The board acted without or in excess of its power. (2) The order, decision or award was procured by fraud. (3) The order, decision or award is not in conformity to the provisions of this act. (4) If findings of fact are in issue, whether such findings of fact support the order, decision or award.

3. Master and Servant—Injury to Servant—Workmen's Compensation Act.—Section 4898, Kentucky Statutes, being a portion of the Workmen's Compensation Act, provides for specific payments for named injuries, which include the loss of the sight of an eye, and concludes with a general provision providing for compensation "in all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of injured employee." Held, that the compensation provided for specific injuries is confined to the injuries named, and that for an injury resulting in the loss of the eyeball itself, the general provision applies, and not the specific provision making compensation "for the loss of the sight of an eye."

LILLARD CARTER and R. L. BLACK for appellant.

O'NEAL & O'NEAL and F. R. FELAND for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On October 4, 1916, John T. Nelson was working for the Kentucky River Stone & Sand Company as foreman of a gang of men engaged in sledging rock. As he was passing one of the men engaged in that work, a small piece of rock struck him in the eye, causing him to lose the sight thereof and necessitating the removal of the eyeball and the use of a glass eye.

The company admitted that the accident arose out of and in the course of Nelson's employment, and prior to the hearing before the Workmen's Compensation Board offered to pay him 65% of his average weekly wages during one hundred weeks as required by section 18 of the Workmen's Compensation Act, Acts 1916, chapter 33, page 354, now section 4899, Kentucky Statutes, which provides in part as follows:

"For injuries enumerated in the following schedule, the employe shall receive in lieu of all other compensation, except such as may be payable under sections 4 and 5 hereof, a weekly compensation equal to 65% of his average weekly earnings, but not less than $5 per week nor exceeding $12 per week, for the respective periods stated thereon, to-wit:

"The total and permanent loss of the sight of an eye, 65% of the average weekly wages during one hundred weeks."

Nelson declined to accept the offer of the company and insisted that he was entitled to compensation under the following provision of section 18:

"In all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employe, compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employe and age at the time of injury; the compensation paid therefor shall be 65% of the average weekly earnings of the employe, but not less than $5 nor more than $12, multiplied by the percentage of disability caused by the injury, for such period as the board may determine, not exceeding 335 weeks nor a maximum sum of $4,000.00."

The findings of fact, ruling of law and award of the Workmen's Compensation Board are as follows:

### FINDINGS OF FACT.

"1. Plaintiff was injured by accident arising out of and in the course of his employment, and is entitled to compensation at the rate of $9.75 per week for such a period as the provisions of the Compensation Act may require.

"2. The removal of the injured eyeball was necessitated by the injury, the socket being left in good condition and the patient's ability to wear an artificial eye being normal, or about equal to the average in such cases.

"3. The plaintiff's earning capacity is not shown to have been impaired by the removal of the eyeball, beyond the impairment caused by the loss of sight.

"4. The removal of an eye which has been accidentally injured sufficiently to destroy the sight is necessary, in nearly all instances, in order to save the remaining eye.

### RULING OF LAW.

"1. The substitution of an artificial eye for a blind eye does not cause an increased disfigurement which will impair the future usefulness or occupational opportunities of an employe engaged in the employment in which plaintiff was injured:

AWARD.

"The plaintiff, John T. Nelson, is awarded compensation against the defendant, the Kentucky River Stone & Sand Company, and its insurer, the Employers' Liability Assurance Corporation, Limited, in the sum of $9.75 per week for a period of 100 weeks. All costs of proceedings before the Workmen's Compensation Board are directed to be paid by the plaintiff, the defendant having before hearing offered to pay the amount recovered."

Within twenty days after the rendition of the award, Nelson appealed to the Anderson circuit court by filing a petition for a review on following grounds:

"1st. The said court acted in excess of its power.

"2nd. Neither the order, decision nor award is based on the facts of the case, nor is any one of them in conformity with the provision of the said act. The findings of fact are not such as are warranted by the proof and do not support the order, decision or award.

"3rd. The award makes no allowance for the loss of the eye itself or disfigurement, but only for the loss of the sight."

On the appeal the petitioner offered evidence to the effect that the eye was so injured that it was necessary to cut very deep in removing the eyeball, thus leaving a poor stump for the fitting of an artificial eye. For this reason the petitioner will not be able to wear an artificial eye all the time, and during such period as he may wear it he will be subjected to constant pain and annoyance, and will be compelled to lose much time in cleansing the artificial eye. There was also evidence that he would be greatly disfigured by the loss of his eyeball.

On final hearing the circuit court affirmed the award and the petitioner appeals.

Under our statute, all awards or orders of the board are conclusive and binding as to all questions of fact, and no new or additional evidence may be introduced in the circuit court except as to the fraud or misconduct of some person engaged in the administration of the act, and affecting the order, ruling or award, but the court shall otherwise hear the cause upon the record or abstract thereof as certified by the board, and shall dispose the cause in summary manner, its review being

limited to determining whether or not: (1) The board acted without or in excess of its power. (2) The order, decision or award was procured by fraud. (3) The order, decision or award is not in conformity to the provisions of this act. (4) If findings of fact are in issue, whether such findings of fact support the order, decision or award. Section 4935, Kentucky Statutes.

Here it is not contended that any one engaged in the administration of the act was guilty of fraud or misconduct. That being true, its findings of fact cannot be reviewed or set aside. We shall, therefore, consider the case in the light of the board's finding that the petitioner's eyeball was removed and he was compelled to wear a glass eye, but that neither of these things impaired his earning capacity beyond the loss of the sight of his eye, or caused a disfigurement that impaired his future usefulness or occupational opportunities. The question, therefore, is whether the award conforms to the statute, and this depends on whether the injury falls within the specific schedule providing compensation for the loss of the sight of an eye, or under the general provision applying to all other cases. In this connection, it must be borne in mind that disfigurement impairing the future usefulness or occupational opportunities of the injured employe is not a *sine qua non* to compensation under the general provision, since that provision applies "in all cases of permanent partial disability, including any disfigurement," etc. Hence, the adverse finding of the board on this phase of the question is not controlling.

But it is argued in favor of the award, that the act in providing a particular allowance for the loss of the sight of an eye, necessarily contemplated and included all the reasonable and natural consequences of that particular injury. Manifestly, if this rule were adopted, the scheduled allowances would be extended far beyond the specific injuries for which they were intended. The state of Wisconsin has a Workmen's Compensation Act very similar to ours. In the case of Northwestern Fuel Company v. Leipus, et al., 152 N. W. 856, 9 N. C. C. A. 347, the Supreme Court of Wisconsin had under consideration the question whether an employe, who had suffered an impairment of the use of his arm to the extent of one-half, should be compensated under the schedule providing a certain compensation for "the loss of

an arm at the elbow." In denying the employe's right to compensation under that provision, the court said:

"The theory of the statute seems to be to make provision in the schedule, subdivision 5, for certain specific injuries, and to leave all other injuries to be compensated for under other general provisions of the act.

"It is the opinion of the court, therefore, that the injury to Leipus does not fall within the schedule of fixed compensation designated in the statute under which it was classed by the commission, namely, 'the loss of an arm at the elbow.'

"Obviously the 'loss' of a member designated in the schedule has reference, not to the impairment of the member by the injury, but to the physical loss of it. All through the schedule there is nothing to indicate that impairment of a member was intended to be loss of a member or that reduction of the efficiency of the member one-half would be one-half loss of the member. 'The loss of an arm at the elbow,' or 'the loss of a forearm at the lower half thereof' does not mean the impairment of the arm, but the actual physical severance of it. The fact that the schedule so specifically fixes the precise injury for which compensation is allowed, excludes the idea that the schedule covers any other or different injury. In every instance the loss is specifically defined.

"The whole schedule is so specific that it is difficult to see how the legislature could have intended that an injury to an arm impairing its usefulness 50 per cent., or any degree, would come within the schedule. It seems from the whole act that the purpose of the legislature was to confine the fixed compensation named in the schedule in subdivision 5 to the specific injuries named therein."

Looking at our act, we find that it provides compensation at a certain rate for "the loss of a thumb," the "loss of a first finger," the "loss of a hand," the "loss of an arm," the "loss of a foot," the "loss of a leg," etc., thus showing that the compensation therein provided for was confined to the loss of the particular member named. When it deals with the eye, however, it does not provide for compensation for the loss of the eye, itself, but solely for the "loss of the sight of an eye." If it be true, and there is no reason to doubt the soundness of the rule, that the purpose of the legisla-

ture was to confine the fixed compensation provided for specific injuries to those injuries and no others, and that the compensation allowed for a specific injury was not payable for a less injury, the rule should work both ways, and the compensation provided for a particular injury should not be held to include a greater injury. Here, the employe lost not only the sight of his eye, but the eye itself. His injury, therefore, was greater than the mere loss of the sight of the eye. That being true, his case does not fall within the schedule making compensation solely for the loss of the sight of an eye, but falls within the general provision, *supra,* awarding compensation "in all other cases of permanent partial disability," etc.

Wherefore, the judgment affirming the award is reversed, and the cause is remanded with directions to set aside the award and remand the case to the Workmen's Compensation Board for proceedings consistent with this opinion.

Whole court sitting.