BICKEL *v.* RALPH SOLLITT & SONS CONSTRUCTION COMPANY.

[No. 14,744.   Filed January 26, 1933.   Rehearing denied May 19, 1933.]

*Walter R. Arnold* and *Dudley M. Shively*, for appellant.

*Henry L. Humrichouser*, for appellee.

CURTIS, C. J.—This is an appeal from an award of

the full Industrial Board of Indiana. It is the second time these parties have been before this Court on matters arising out of the same accident. The early history leading up to the instant case is as follows: The appellant, while in the employ of the appellee at an average weekly wage of $37.50, on June 30, 1930, suffered an injury arising out of and in the course of his employment resulting in a right and left inguinal hernia. The employer furnished an operation to the employee in an attempt to cure said injury. Afterward, to wit, on August 4, 1930, the appellant and appellee entered into a compensation agreement whereby the appellee was to pay the appellant $16.50 per week during temporary total disability beginning on the 20th day of July, 1930, but not exceeding the period fixed by law. The Industrial Board of Indiana approved the above agreement August 13, 1930, and payments were made in accordance therewith until October 25, 1930, at which time the payments were discontinued by reason of a receipt of the employee in final settlement of compensation, which receipt was dated November 6, 1930, and filed with the Industrial Board November 13, 1930, on form number 28 furnished by the Board to be used in such cases. This receipt acknowledged the payment of a total of $231.00 which included all previous weekly payments and also acknowledged that it was in final settlement of compensation due the employee by reason of the injury complained of and that the disability ceased on the 25th day of October, 1930.

Later the appellant claimed there was a recurrence of his injury, and, on December 22, 1930, he filed with the Board, using the regular printed form 9 furnished by the Board, an application for the adjustment of his claim for additional compensation, and on March 15, 1931, he filed, using the regular printed form 14 furnished by the Board, an application for a review of the

award heretofore made, alleging among other things: (1) "That the disability of said employee on account of said injury has recurred since the date of said award. (2) That the disability of said employee on account of said injury has increased since the date of said award. (3) That said employer and employee have disagreed relative to the continuance of payments under said award." By agreement of the parties the appellant dismissed his application under form 9 and substituted his said application under form 14. Issues were closed by considering a general denial filed as provided by rule 10 of the Board.

The full Board in that case made an award requiring the appellee herein to resume payments of compensation to the appellant for total disability at the rate of $16.50 per week as provided in said agreement, said payments to continue during the period of appellant's total disability, not exceeding the period fixed by law. Upon appeal to this court the award of the full Board was affirmed. See *Ralph Sollitt & Sons* v. *William J. Bickel* (1932), 93 Ind. App. 665, 179 N. E. 327.

The appellee herein paid the compensation to the appellant as ordered by this court until January 20, 1932, when it filed an application with the Industrial Board for a review of said award on account of a change of conditions, alleging that "the disability of said employee on account of said injury has diminished since the date of said award and the disability of said employee on account said injury has ended since the date of said award and that said injury has resulted in a permanent partial impairment."

The single member heard the evidence and made an award of compensation to the appellant "at the rate of $16.50 per week for fifty weeks beginning on July 20, 1930. All deferred payments of compensation to be brought to date and paid in cash in a lump sum. It is

further ordered that the defendant be given credit on this award for all compensation heretofore paid." The appellant filed his petition for a review by the full Board and the latter found from the evidence that "there has been a change in plaintiff's condition since the date of said full board award, in this: that plaintiff's said injury has resulted in permanent partial impairment to the extent of ten per cent of the man as a whole, and, therefore he is entitled to compensation at the rate of $16.50 per week for a period of fifty weeks, beginning July 10, 1930, . . . all deferred payments of compensation to be brought up to date and paid in cash in lump sum. It is further ordered that the defendant be given credit on this award for all compensation heretofore paid." Upon the above finding the full board made its award, the pertinent parts of which are as follows: "It is, therefore, considered and ordered by the full Industrial Board of Indiana that the plaintiff be and the same is hereby awarded compensation against the defendant at the rate of $16.50 per week for fifty weeks, beginning on July 20th, 1930. All deferred payments of compensation to be brought up to date and paid in cash in a lump sum.

"It is further ordered that the defendant be given credit on this award for all compensation heretofore paid.

"It is further ordered that the defendant pay the costs of this proceeding."

From this last award the appellant prayed and perfected this appeal, assigning as error that the award of the full board is contrary to law. This assignment of error is sufficient to present all questions sought to be presented. See section 61 of the Indiana Workmen's Compensation Act, Acts 1929, p. 537.

The appellant's contention is twofold: (a) That the

award is not based on any competent evidence of a change of condition of the appellant, and (b) if the award is valid as for a permanent partial impairment, no previous payments are deductible.

We will take these contentions up in the order mentioned. There were four physicians who testified at the hearing and also the appellant. We have read the evidence carefully. Some of it is in conflict. After considering this evidence the board found that "there has been a change in the plaintiff's condition since the date of said full board award in this: that plaintiff's said injury has resulted in a permanent partial impairment to the extent of 10 per cent of the man as a whole."

Recently this court has said that when, as in this case, the Industrial Board has reached a conclusion as to the ultimate facts which have or have not been established, and has stated such conclusions in its finding of facts, this court must accept the facts so found as true, unless the evidence is of such a conclusive character as to force a contrary conclusion. In order to reach a contrary conclusion we, however, will not weigh the evidence nor will we disregard the reasonable inferences which the Industrial Board may have drawn from the facts which the evidence tends to establish. See *L. B. Roush* v. *W. R. Duncan & Son* (1933), 96 Ind. App. 122, 183 N. E. 410; *Swing* v. *Kokomo, etc., Company* (1921), 75 Ind. App. 124, 125 N. E. 471.

When we have applied these rules to the evidence in the instant case we cannot say that it is of such a conclusive character as to require us to say that the board erred in its finding that the appellant's condition has changed and that there has resulted a permanent partial impairment to the extent of 10 per cent of the man as a whole.

The appellant's second proposition presents the question as to whether or not the board was authorized to

order that "the defendant be given credit on this ■ award for all compensation heretofore paid." This question has been squarely before this court in a recent case and was decided adversely to appellant's contention, unless it may be said that item (h) of the schedule in section 31 of the Act is not governed by the provision of said section that the compensation awarded the employee is in lieu of all other compensation on account of his injuries. See *L. B. Roush* v. *W. R. Duncan & Sons et al., supra.* See also *Standard Cabinet Company* v. *Landgrave* (1921), 76 Ind. App. 593, 132 N. E. 661; *Zeller* v. *Mesker et al.* (1927), 85 Ind. App. 659, 155 N. E. 520; *Johnson* v. *Cole* (1928), 87 Ind. App. 678, 161 N. E. 700.

Section 31 of our Act, insofar as it is pertinent to the instant case, is as follows: "For injuries in the following schedule the employee shall receive in lieu of all other compensation, on account of said injuries, a weekly compensation of fifty-five per cent of his average weekly wages for the periods stated for said injuries respectively, to wit: Here follow items (a), (b), (c), (d), (e), (f), (g), (h), and (i) of the schedule. Item (h), under which the award was made, is as follows: '(h) In all other cases of permanent partial impairment, compensation proportionate to the degree of such permanent partial impairment, in the discretion of the Industrial Board, not exceeding five hundred weeks.'"

The appellant relies upon the case of *Baltimore & Philadelphia Steamboat Company et al.* v. *Augustus P. Morton et al.* (1932), 284 U. S. Supreme Court Reports 408, 52 S. Ct. 187, 188, 76 Law Ed. 366. When this case is read and fully analyzed it lends no support to the appellant's contention. It was decided under the Longshoremen's and Harbor Workers' Act of March 4, 1927, 44 Stat. at L. 1427, Chap. 509 U. S. C., title 33, sections 900 et seq. The injured employee met with an

accident to his left arm. He suffered total disability due to the same injury for 34 weeks and a permanent partial impairment of 40 per cent of the use of the arm. Under the Act the maximum to be paid for a disability, partial in character but permanent in quality, for an injury to the arm is 66 2/3 per cent of the average weekly wage for 312 weeks. The Act also provides for what is termed a healing period of not to exceed 32 weeks for injuries of the kind suffered by the employee and that if the injured employee's temporary total disability exceeds the prescribed healing period, the excess shall be added to the total compensation period specified in the schedule in subdivision (c). If the actual duration of the temporary total disability does not exceed such healing time, then the applicable period specified in such schedule shall not be increased. The Act also provides that: "Compensation for permanent partial loss of use of a member may be for proportionate loss or loss of use of the member." The average weekly wage of the employee was found to be $36.06. The opinion of the court stated through Mr. Justice Butler was that the injured employee was entitled to compensation as follows: 32 weeks (the maximum healing period) at 66 2/3 per cent of $36.00 being $24.04 weekly for the temporary total disability claim, and in addition thereto was entitled to compensation for the balance of the established compensation period at the proportionate compensation of 40 per cent. The balance of the compensation period was found to be 282 weeks which was arrived at by taking the schedule period of 312 weeks and subtracting therefrom the 32 weeks of healing period, leaving 280 weeks to which was added the 2 weeks of excess healing period. It will thus be observed that the healing period of 32 weeks which occurred during the total disability of the injured employee was in fact deducted from the total schedule of 312 weeks. And this result was

reached without any provision in the Act under which the case was decided to the effect that the compensation to be paid under the schedule shall be in lieu of all other compensation. There seems to have been no serious question made in the case as to the authority to deduct the 32 weeks. The real contention of the petitioner was that for the said 32 weeks the rate should have been, not the full rate as allowed by the court, but the rate should have been at the proportionate rate of 40 per cent for the entire 312 weeks which included the 32 weeks. It was in connection with this contention of the petitioner that the court made use of the language quoted by the appellant herein in his brief. It was demonstrated that whenever the temporary total disability of an arm continued during the full time allowed for healing, to wit, 32 weeks and the subsequent permanent partial loss of its use was not more than 10 per cent, the injured employee would recover less for the permanent partial loss than if he had suffered only the temporary total disability. The court then said that Congress may not reasonably be assumed to have intended to require more compensation for a lesser disability than for a greater one including the lesser and that "nothing less than compelling language would justify such a construction." The court was considering a case where there was a temporary total disability followed by a permanent partial impairment in the use of a member of the body, to wit, the left arm, and it would be comparable to the situation under our law where there was a temporary total disability followed by a permanent partial loss of the use of a member of the body as provided for by our item (c) of the schedule in sec. 31, *supra*. The award in the instant case was not under item (c) of the schedule but was under item (h) and it is difficult to see how the above case lends any support to the appellant's contention. There is also

a manifest difference between the two acts as to the method to be used in arriving at the amount of compensation due the injured employee. Appellant also cites two cases from Kentucky: *Nelson* v. *Kentucky River Stone & Sand Co.* (1918), 182 Ky. 317, 206 S. W. 473. See also, same case on rehearing, 185 Ky. 583, 209 S. W. 506, and *Mills* v. *Mills & Connelly et al.* (1926), 214 Ky. 675, 283 S. W. 1010. We have examined the Kentucky Compensation Law and have examined the section thereof that would most nearly correspond to our section 31, *supra,* and we find that in our law the schedule composing the section is specifically referred to by letters (a) to (i) inclusive, clearly indicating that item (h) of the schedule being the one in question in the instant case is a part of the schedules covered by the section. It is not so indicated in the Kentucky law. See Honnald on Werkmen's Compensation, Vol. 2, p. 1177, sec. 18. In the first of the two Kentucky cases cited above the court held that since the employee lost not only the sight of his eye but also lost the eye itself that the injury did not fall within the specific schedule for the "loss of the sight of an eye." The loss of the sight of an eye was compensable at 100 weeks only. Because the award was limited by the board to 100 weeks the cause was remanded with directions to set aside the award and for further proceedings not inconsistent with the opinion of the court. The Kentucky statute on disfigurement which is covered by our item (i) of the schedule of sec. 31 of the Act, is not denominated a specific item in their schedule as in our law, but is covered under the general reference to "all other cases." The first Kentucky case above mentioned quotes from the case of *Northwestern Fuel Co.* v. *Leipus et al.* (1915), 161 Wis. 450, 152 N. W. 856, Ann. Cas. 1918A 533. We have examined the compensation law of Wisconsin upon which the case rests and find that the law

of that state is radically different from our own law. They have no sections or schedules corresponding to our items (b) and (c) of the schedule which cover loss of use in our section 31, *supra,* and accordingly the court held that where the employee has suffered the loss of use of his arm to the extent of one-half, that the injury did not fall within the schedule of fixed compensation for the "loss of an arm at the elbow." The other Kentucky case cited turns upon the interpretation to be placed upon their law relative to the loss of that part of the leg caused by an amputation 7½ inches above the ankle joint. The specific schedule was for loss of "foot" and "loss of leg." The court held that for the loss sustained by the employee there was no specific schedule under their law and that it was embraced with the class of "all other cases of permanent partial disability." It was also, in effect, held that the money paid for a claim for compensation during a "temporary period of total disability following an operation which was necessary immediately after the injury" was not deductible from the award for permanent partial disability. That same court in *Workmen's Compensation Board* v. *U. S. Coal & Coke Co.* (1922), 196 Ky. 833, 245 S. W. 900, held that, "where a period of total temporary disability is followed by a period of permanent partial disability, the period of time for which an allowance is made for temporary total disability should be deducted from the maximum period fixed for permanent partial disability, but that the amount allowed for such total temporary disability should not be deducted from the amount allowed for permanent partial disability where the maximum allowance has not been reached." These results in the Kentucky cases seem to have been reached by reason of the peculiar wording of the statute applicable in each case. They illustrate the fact that the Compensation Law in the several states is statutory law and

that to a large extent in each case the decision must rest upon the legislative intent as disclosed by the compensation law of the particular state.

From an examination of the Kentucky statute and a reading of the above decisions it becomes apparent that under the Kentucky law the provision commencing with the words "and all other cases" is not a part of their specific schedule, corresponding with our section 31, *supra,* although it is found in the same section of the Kentucky law that contains their specific schedules. It also becomes apparent from a study of our statute and the decisions of our court that said provisions is a part of our schedule. Our individual items (h) and (i) in our schedule when they are taken together cover practically the same ground that is covered in Kentucky by the said provision dealing with "all other cases." We believe that item (h) is a part of our schedule and that it is governed and controlled by the words "in lieu of all other compensation" to the same extent as the other items of the schedule. If item (h) of section 31, our act, *supra,* is not governed by the words "in lieu of all other compensation" then we see no reason why item (c) of the schedule of the same section which likewise gives the board the right to determine, within the limits set by the law, the number of weeks of compensation to be awarded, should not also be held not to be so governed. But our court has decided that what is now our item (c) of the schedule is governed by the words "in lieu of all other compensation." See *Johnson* v. *Cole, supra.* In that case the employee received a foot injury that caused a period of total disability which was followed by a 25 per cent permanent partial impairment of the foot. The court said: "The question for determination is: Where there has been an award for total or partial disability resulting from an accidental injury to an employee's foot, and upon review by the Indus-

trial Board on account of changed conditions, the board finds that the disability has ceased, but that the injury had developed into a permanent impairment of the foot, should the payment of compensation cease, if the aggregate of the payments made under the award for disability equals or exceeds the compensation fixed by §31 of the Compensation Act? If the question is answered in the affirmative, the award must stand. The question, which involves the construction of §31, *supra,* is not difficult, and will therefore, require no extended discussion. . . . By the awards as for disability, he has already received 'on account of the injuries' a sum in excess of the sum he would have received for the permanent partial impairment, and the purpose of the statute has been accomplished."

Under our law and our decisions we hold that the said item (h) of §31 of our Act, *supra,* is controlled by the words "in lieu of all other compensation" and that the award of the full board is not contrary to law.

Award affirmed.