NORTHWESTERN FUEL COMPANY, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*May 6—November 16, 1915.*

*Workmen's compensation: "Loss" of arm, etc.: Impairment of use: Statute construed.*

1. The "loss" of a member, within the meaning of the schedule in sub. (5), sec. 2394—9, Stats., means the actual physical severance of it, not an impairment of its use; and it was error to award compensation under that schedule to an employee for an injury by which, as the industrial commission found, he would be "partially permanently disabled in his left forearm to an extent equivalent to a one-half loss of said forearm."

2. The further provision in said sub. (5), sec. 2394—9, with respect to "all other cases in this class," refers to the injuries mentioned specifically in the schedule, and was not intended to include impairment occasioned by an injury not there named.

3. Injuries for which provision is not made in said schedule are to be compensated for under other general provisions of the statute.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an appeal from a judgment affirming an award of the *Industrial Commission.*

The award provided that plaintiff pay the defendant *Leipus* compensation for an injury sustained by him by reason of which he was found by the *Commission* to be partially permanently disabled in his left forearm to an extent equivalent to a one-half loss of said forearm.

The award included an allowance of $9.37 per week, being sixty-five per cent. of the average earnings of *Leipus* for the period of his actual total disability from the time of the injury, October 6, 1913, to January 3, 1915, and also an additional allowance of $9.37 per week for 100 weeks.

For the appellant there was a brief by *Olin, Butler, Stebbins, Curkeet & Stroud,* and oral argument by *B. H. Stebbins.*

For the respondent *Industrial Commission* there was a' brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and oral argument by *Mr. Gilman.*

For the respondent *Leipus* the cause was submitted on the brief of *Dietrich & Dietrich.*

The following opinion was filed June 1, 1915:

KERWIN, J. The question presented is whether the proper allowance of compensation was made. This involves the inquiry whether the proper construction was placed upon sec. 2394—9, Stats., by the *Industrial Commission* and the court below.

On October 6, 1913, the defendant *John Leipus,* while in the employ of the plaintiff as a laborer, sustained an injury to his left forearm resulting in a fracture of both bones thereof. The bones did not heal properly and several operations were performed thereon. The arm finally healed, but was left in a weakened condition. At the final hearing be-

fore the *Commission* it was found that *Leipus* had been totally incapacitated for work and that such incapacity would continue until January 3, 1915, after which last named date the *Commission* held that *Leipus* would "have a forearm that is functionally fifty per cent. of the normal forearm;" and further found "that by reason of said injury applicant will be totally disabled until January 3, 1915, and by reason of said injury will also be partially permanently disabled in his left forearm to an extent equivalent to a one-half loss of said forearm."

On these findings the *Commission* awarded *Leipus* for total disability sixty-five per cent. of his average weekly earnings for sixty-five weeks, and in addition awarded sixty-five per cent. of his average weekly earnings for 100 weeks, the 100 weeks being one half of the allowance for the loss of an arm at the elbow as provided by schedule of fixed compensation contained in sub. (5), sec. 2394—9, Stats.

The statutes relating to the matter under consideration provide in part as follows:

"Section 2394—9. Where liability for compensation under sections 2394—3 to 2394—31, inclusive, exists, the same shall be as provided in the following schedule:

"(1) Such medical, surgical and hospital treatment, . . . as may be reasonably required at the time of the injury and thereafter during the disability. . . .

"(2) If the accident causes disability, an indemnity which shall be payable as wages on the eighth day after the injured employee leaves work as the result of the injury, and weekly thereafter, which weekly indemnity shall be as follows:

"(a) If the accident causes total disability, sixty-five per cent. of the average weekly earnings during the period of such total disability. . . .

"(b) If the accident causes partial disability, sixty-five per cent. of the weekly loss in wages during the period of such partial disability.

"(c) If the disability caused by the accident is at times total and at times partial, the weekly indemnity during the periods of each such total or partial disability shall be in accordance with said subdivisions (a) and (b), respectively.

"(d) Said subdivisions (a), (b) and (c) shall be subject to the following limitations:

"In case of temporary or partial disability aggregate indemnity for injury to a single employee caused by a single accident shall not exceed four times the average annual earnings of such employee, and in case of permanent total disability aggregate indemnity for injury to a single employee caused by a single accident shall not exceed six times the average annual earnings of such employee.

"Total blindness of both eyes, or the loss of both arms at or near the shoulder, or of both legs at or near the hip, or of one arm at the shoulder and one leg at the hip, shall constitute permanent total disability. This enumeration shall not be exclusive but in other cases the commission shall find the facts.

"The aggregate disability period shall not, in any event, extend beyond fifteen years from the date of the accident.

· ·  · · · · · · · · · · · · · · · · · · · · ·

"(3) Where death proximately results from the injury . . .

"(a) In case the injured employee was permanently totally disabled, a sum equal to four times his average annual earnings, but which, when added to the disability indemnity paid and due at the time of death, shall not exceed six times his average annual earnings.

"(b) In case the injured employee was not permanently totally disabled, such sum which, when added to the disability indemnity paid and due at the time of his death, shall equal four times his average annual earnings.

"(4) If death occurs to an injured employee other than as a proximate result of the accident, before disability indemnity ceases, death benefit shall be as follows:

"(a) Where the accident proximately causes permanent total disability, it shall be the same as if the accident had caused death.

"(b) Where the accident proximately causes permanent partial disability, liability shall exist for such benefit as shall fairly represent the proportionate extent of the impairment of earning capacity in the employment in which the deceased was working at the time of the accident or other suitable employment, caused by such disability.

· ·  · · · · · · · · · · · · · · · · · · · · · ·

"(5) In cases included by the following schedule, the compensation to be paid, subject to the provisions of this act for

maximum and minimum payments, shall be sixty-five per cent. of the average weekly earnings of the employee for the periods named in the schedule, to wit:

"The loss of one arm at or near the shoulder, two hundred forty weeks;

"The loss of an arm at the elbow, two hundred weeks;

"The loss of a forearm at the lower half thereof, one hundred sixty weeks;

"The loss of a hand, one hundred sixty weeks;

"The loss of a palm where the thumb remains, eighty weeks;

"The loss of a thumb and the metacarpal bone thereof, sixty weeks;

"The loss of a thumb at the proximal joint, forty weeks;

"The loss of a thumb at the second or distal joint, twenty weeks;

. . . . . . . . . . . . . . . . .

"The loss of a leg at the hip joint, or so near thereto as to preclude the use of an artificial limb, two hundred forty weeks;

"The loss of a leg at or above the knee, where stump remains sufficient to permit the use of an artificial limb, one hundred sixty weeks;

"The loss of a foot at the ankle, one hundred twenty weeks;

"The loss of a great toe with the metatarsal bone thereof, thirty weeks;

. . . . . . . . . . . . . . . . . .

"Total blindness of one eye, one hundred twenty weeks;

"Total blindness of the second eye, two hundred forty weeks;

"Total deafness of both ears, one hundred sixty weeks;

"Total deafness of one ear, forty weeks;

"Total deafness of the second ear, one hundred twenty weeks.

"When by reason of infection or other cause not due to the neglect or misconduct of the injured employee, he is actually disabled longer than the time specified in the foregoing schedule from earning a wage, compensation shall be paid such employee for such loss of wage within the limit otherwise provided.

"For the purposes of this schedule permanent and complete paralysis of any member shall be deemed equivalent to the loss thereof.

"Whenever an amputation is made between any two joints mentioned in this schedule (except amputations between the knee and hip joint) the resultant loss shall be estimated as if the amputation had been made at the joint nearest thereto.

"In all other cases in this class the compensation shall bear such relation to the amount stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule."

The contention of counsel for plaintiff is that in cases where the schedule of fixed compensation is applicable it provides the entire compensation payable and replaces the compensation that would otherwise be payable as disability indemnity, and that the instant case is governed by the schedule.

It seems to have been conceded by counsel on both sides that the applicant's injury was a relative injury under the schedule contained in sub. (5) of sec. 2394—9, therefore the schedule governed, but it appears that the *Commission* was in doubt upon the subject. In its opinion the *Commission* said:

"It may be a fairly close question as to whether or not applicant's injury can be said to be a relative injury under the schedule in the Compensation Act, but it seems to be conceded by both parties that it is, and on the whole the compensation will be fairly measured by applying the schedule in this case."

The theory of the statute seems to be to make provision in the schedule, sub. (5), for certain specific injuries and to leave all other injuries to be compensated for under other general provisions of the act.

It is the opinion of the court, therefore, that the injury to *Leipus* does not fall within the schedule of fixed compensation designated in the statute under which it was classed by the *Commission,* namely, "the loss of an arm at the elbow."

Obviously the "loss" of a member designated in the schedule has reference, not to the impairment of the member by the injury, but to the physical loss of it. All through the

schedule there is nothing to indicate that impairment of a member was intended to be loss of a member or that reduction of the efficiency of the member one half would be a one-half loss of the member. "The loss of an arm at the elbow," or "The loss of a forearm at the lower half thereof," does not mean the impairment of the arm, but the actual physical severance of it.      The fact that the schedule so specifically fixes the precise injury for which compensation is allowed, excludes the idea that the schedule covers any other or different injury.      In every instance the loss is specifically defined.

The whole schedule is so specific that it is difficult to see how the legislature could have intended that an injury to an arm impairing its usefulness fifty per cent., or any degree, would come within the schedule.      It seems from the whole act that the purpose of the legislature was to confine the fixed compensation named in the schedule in sub. (5) to the specific injuries named therein.

Nor can we see that the injury here falls within the provision of sub. (5), sec. 2394—9, viz.: "In all other cases in this class," etc., because the injury here does not fall within the schedule class.      "All other cases in this class" obviously has reference to the injuries mentioned specifically in the schedule and was not intended to include impairment occasioned by a different injury than that named in the schedule.

The court is therefore of opinion that the *Commission* and the court below were in error in holding that the present injury fell within the schedule of fixed compensation contained in sub. (5), sec. 2394—9, Stats., and that compensation should have been awarded *Leipus* under the other provisions of the statute, not under the schedule contained in said sub. (5).

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for further proceedings according to law.

The appellant moved for a rehearing.

In support of the motion there was a brief by *Olin, Butlér, Stebbins, Curkeet & Stroud,* attorneys for the appellant, and a brief on behalf of certain Wisconsin employers by *Vroman Mason* and *Thomas C. Angerstein* as *amici curiœ.*

In opposition to the motion there was a brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, attorneys for the respondent *Industrial Commission,* and a brief by *Dietrich & Dietrich,* attorneys for the respondent *Leipus.*

The motion was denied, without costs, on November 16, 1915.