NORTHERN STATES POWER COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 21—December 23, 1947.*

For the appellants there was a brief by *Ramsdell & King* of Eau Claire, and oral argument by *George Y. King.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

WICKHEM, J.   Defendant was a salesman in the employ of Northern States Power Company.   He sustained an injury on October 24, 1938, while lifting a refrigerator during a demonstration to a customer.   The injury was a protruded intervertebral disc at the fourth lumbar interspace.   He was operated upon for this condition in November, 1944, and a bone graft was placed on the spine.   The healing period expired October 16, 1945.   He is now employed as a salesman at the same or higher earnings than he made before the injury.   The medical opinion is to the effect that he sustained a ten per cent to fifteen per cent permanent total disability due to loss of motion in the spine.   The commission found that defendant sustained a permanent disability equivalent to twelve and one-half per cent of total permanent disability and entered an award thereon.

Plaintiffs contend that the commission acted in excess of its powers in disregarding the fact that defendant suffered no loss of earnings after the healing period.   Implicit in this contention is the position that compensation can be awarded for non-schedule injuries after the healing period only upon a showing of actual wage loss.   This requires some consideration of the statutory history of applicable sections.

In 1911 sec. 2394—9, Stats. (denominated "Scale of compensation"), provided that if an accident cause a total disability. "sixty-five per cent of the average weekly earnings during the period of such total disability" shall be paid; that if the accident cause partial disability "sixty-five per cent of the weekly loss in wages during the period of such partial disability" shall be paid.   Sec. 2394—10, 2, provided that the weekly loss above referred to shall consist of such percentage of the average weekly earnings computed according to the provisions of the section "as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the acci-

dent." Under the law as above indicated this court had before it in 1913 the case of *Mellen Lumber Co. v. Industrial Comm.* 154 Wis. 114, 142 N. W. 187. In that case Winters was employed as a sawyer and while at work lost the thumb and index finger of his left hand. The commission found as a fact that applicant was totally incapacitated by the accident from again following the occupation of sawyer but that there were other occupations where he could earn a good wage. In other words, the commission found a total permanent impairment of applicant's earning capacity in the employment in which he was then engaged. Upon appeal this court held sec. 2394—10, 2, applicable to cases of permanent disability and that applicant was entitled to such sum as would fairly represent the impairment of his earning capacity as a sawyer. In *International H. Co. v. Industrial Comm.* 157 Wis. 167, 147 N. W. 53, decided in 1914 upon facts which occurred in 1912, an employee received a piece of steel in his eye permanently injuring the sight of that eye. The court again held that in order to be compensated applicant must establish impairment of his earning capacity in the employment in which he was engaged at the time of the accident; that if this were shown it was immaterial that he could earn a substantial wage in other occupations. The commission in this case had found that applicant's earning capacity had not been so impaired but awarded compensation upon the theory that employers would be less likely to hire him because of the partial loss of sight in one eye. It was held that there was no evidence to sustain this finding but it was intimated that if sustained it would support the award.

In 1913 the legislature made several amendments to the act. A new subsection numbered (5) was added to sec. 2394—9, Stats., and provided a schedule of compensation for specific injuries such as the loss of an arm, leg, thumb, etc. A schedule was included which made a specific award for each injury mentioned, and it was provided that "in all other cases in this class the compensation shall bear such relation to the amount stated

in the above schedule as the disabilities bear to those produced by the injuries named in the schedule." The disabilities referred to in sub. (5) are customarily called "schedule injuries" and those which are not specifically within the schedules but which are related are referred to as "relative injuries." This enactment was followed by the decision in *Northwestern Fuel Co. v. Industrial Comm.* 161 Wis. 450, 152 N. W. 856, in which this court pointed out that any injury which could not be treated as a schedule or a relative injury must be determined by the general provisions of the act, presumably sec. 2394—10, 2. In 1913 sec. 2394—10, 2, was also amended to provide that compensation shall fairly represent the extent of impairment of earning capacity "in the employment in which he was working at the time of the accident, *and other suitable employments.*" Following this enactment this court decided *McDonald v. Industrial Comm.* (1917) 165 Wis. 372, 162 N. W. 345, upon facts arising in 1916. In that case applicant was badly injured about the legs, could only walk with crutches, and had no other trade than that of carpenter or laborer. There was testimony that he could do considerable work if he were not required to walk or stoop. The court sustained the commission's finding that applicant was permanently and totally disabled from performing manual or other labor in his former employment or any other suitable employment. There followed in the same year the case of *Johnstad v. Lake Superior T. & T. R. Co.* 165 Wis. 499, 162 N. W. 659. In that case applicant received a piece of steel in his right arm resulting in a permanent partial disability, the wrist being stiff to the extent of fifty per cent loss of motion. He returned to work at the same wages in a different line of work, but in a suitable employment. He was denied compensation and the award was sustained by this court.

Down to this point we think it is pretty clear that in all cases of permanent partial disability other than schedule and relative injuries the statute was held to require a showing that applicant suffered impairment of earning capacity in the same or

other suitable employments. This would not mean, of course, where an employee, due to the generosity of his employer, was actually paid greater wages than he could legitimately earn in view of his physical impairment that he was not entitled to compensation if he could show an actual impairment of earning capacity. But the showing of impairment in relation to earning capacity was required in respect of all compensable injuries with the exception above noted. However, the amendment of the statute in 1923 and the entire pattern of legislation since that time is contrary to plaintiffs' contentions. In 1923 the sections of the act were renumbered and sec. 2394—9, 2 (a), (b), (c), and (d), Stats., became sec. 102.09 (2) (a), (b), (c), (d). Par. (b) of sec. 2394—9, 2 became sub. (2) (b) of sec. 102.09 and provided "if the accident causes partial disability, during the period of such partial disability such proportion of the weekly indemnity rate for total disability as the actual wage loss of the injured employee bears to his average weekly wage at the time of his injury." Sec. 102.09 (2) (d) provided in part: *"In case of permanent partial disability aggregate indemnity shall bear such relation to the aggregate indemnity for permanent total disability as the nature of the injury bears to one causing permanent total disability. In case where the only permanent disability is covered by the provisions of subsections (5) and (6) of this section, such subsection's shall govern."* Subs. (5) and (6) of sec. 102.09 relate to so-called schedule injuries and also to the so-called relative injuries. The schedule injuries are all permanent partial injuries and provision is made for relative injuries by sec. 102.09 (5) (fm) as follows: "For all other injuries to the members of the body or its faculties which are specified in the schedules in paragraphs (a) and (e) of this subsection resulting in permanent disability, though the member be not actually severed or the faculty totally lost, compensation shall bear such relation to that named in these schedules as disabilities bear to those produced by the injuries named in these schedules. . . ." Sec. 102.11 was entitled by the legislature "Method of compu-

tation." Sub. (2) provides in substance as did sec. 2394—10, 2, that the weekly loss in wages referred to in sec. 102.09 shall consist of such percentage of the average weekly earnings of the injured employee, computed according to the provisions of this section, as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the accident, and other suitable employments, the same to be fixed as of the time of the accident, but to be determined in view of the nature and extent of the injury. It is the retention of this section in the law as amended in 1923 and its persistence down through 1937 which raises the difficulty presented by this case. There were amendments that are not of concern here and some renumbering which will not be reviewed other than to state that sec. 102.11 (2), Stats. 1923, has become sec. 102.11 (3), Stats. 1937, and 102.09 (2) (d) became 102.44 (3). It is our conclusion that sec. 102.44 (3) (a), which specifically deals with permanent partial disabilities not falling into the schedule or relative-injury class and which requires that the compensation bear such relation to the aggregate weekly indemnity for total permanent disability as the *nature of the injury* bears to one causing permanent total disability, governs the case adversely to appellant. The difficulty, of course, is that sec. 2394—10, 2, has been retained in virtually the same form in sec, 102.11 (3) which requires that a wage loss be determined by considering the proportionate extent of the impairment of applicant's earning capacity in the employment at which he was working at the time of the injury or other suitable employments, and this was treated by this court prior to 1923 as applicable to all cases of permanent disability. The argument is made with some force that this section, which has not been substantially changed, ought to be considered to have the same meaning now as it had then and we think this would be so were it not for the 1923 amendment which appears to us rather plainly to take permanent partial disability out from under the operation of sub. (3) of sec. 102.11. The general scheme of the statutes

following the development of schedule and relative injuries, all of which constituted permanent partial disability, indicates that the legislature was concerned with bringing nonschedule and nonrelative disabilities into conformity with schedule and relative disabilities. Indeed, in 1923 major schedule disabilities were compensated on the basis of a percentage resulting from a comparison between the schedule disability and a permanent total disability. In 1923 the legislature made nonschedule and nonrelative injuries compensable specifically on the basis of a comparison between the nature of the *injury* and the nature of *an injury* causing permanent total disability. It was not necessary to change the terms of sec. 102.11 (3) for the reason that its express terms relating as they did to weekly wage loss specifically applied only to sec. 102.43 (2) which is the only section dealing with compensation that refers to a wage loss. Hence, we think that although sec. 102.11 (3) was not amended the provisions of sec. 102.44 (3) heretofore discussed have cut its application down to temporary disabilities. Such a construction leaves no disparity between schedule and relative injuries on the one hand, and nonschedule injuries causing permanent partial disability on the other. This also conforms to the practical necessities. During the healing period it is possible to establish a wage loss because that is a past event. But since an award for permanent disability is to be made for all time at the end of this period it must be based upon some sort of prediction as to impairment of earning capacity. It appears to us that the legislature has specifically chosen in the case of nonschedule permanent partial disabilities the method of comparing the severity of the injuries causing such a disability with those causing permanent total disability. We see no other construction that will give meaning to sec. 102.44 (3). We conclude that the trial court properly determined this matter and that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

FOWLER, J., took no part.