Adela S. HAGEN, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Hess Memorial
Hospital Association, Inc., a Wisconsin corporation
and Fire & Casualty Insurance Company of Connec-
ticut, Respondents-Respondents-Petitioners.

Supreme Court

*No. 94–0374. Oral argument March 4, 1997.—Decided June 6,
1997.*

(Also reported in 563 N.W.2d 454.)

13

For the respondent-respondent-petitioner, LIRC, there was oral argument by *Lowell E. Nass*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the respondents-respondents-petitioners, Hess Memorial Hospital and Fire & Casualty Insurance Company of Connecticut, there were briefs by *Ronald S. Aplin, Frederick J. Smith* and *Peterson, Johnson & Murray, S.C.*, Madison and oral argument by *Ronald S. Aplin*.

For the plaintiff-appellant there was a brief by *John R. Orton* and *Curran, Hollenbeck & Orton, S.C.*, Mauston and oral argument by *John R. Orton*.

Amicus curiae brief was filed by *Michael H. Gillick* and *Murphy, Gillick, Wicht and Prachthauser*, Milwaukee for the Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *Thomas M. Rohe* and *Otjen, Van Ert, Stangle, Lieb & Weier, S.C.*, Milwaukee for the Wisconsin Insurance Alliance.

Amicus curiae brief was filed by *James R. Gorton* and *Denissen, Kranzush, Mahoney & Ewald, S.C.,* Green Bay for the Civil Trial Counsel of Wisconsin.

Amicus curiae brief was filed by *Eric E. Hobbs* and *Michael, Best & Friedrich,* Milwaukee for the Wisconsin Manufacturers & Commerce.

¶ 1. ANN WALSH BRADLEY, J. The respondents, the Labor and Industry Review Commission (LIRC), Hess Memorial Hospital Association, Inc. (the Hospital), and Fire and Casualty Insurance Company of Connecticut (the Insurer), seek review of a published decision of the court of appeals.[1] The court of appeals reversed a circuit court decision which upheld LIRC's determination that injuries sustained by the plaintiff, Adela S. Hagen, were scheduled injuries for purposes of the Wisconsin Worker's Compensation Act (WCA). The petitioners assert that the court of appeals erroneously failed to defer to LIRC's long-standing view that under the permanent partial disability (PPD) schedule,[2] a shoulder injury is measured as "[t]he loss of an

---

[1] *See Hagen v. LIRC,* 201 Wis. 2d 51, 547 N.W.2d 812 (Ct. App. 1996) (reversing a decision of the Circuit Court for Juneau County, John W. Brady, Judge).

[2] Section 102.52(1) of the Wisconsin Statutes (1995–96) sets forth the permanent partial disability schedule. It provides in relevant part:

> In cases included in the following schedule of permanent partial disabilities indemnity shall be paid for the healing period, and in addition, for the period specified, at the rate of two-thirds of the average weekly earnings of the employe, to be computed as provided in s. 102.11:
>
> (1) The loss of an arm at the shoulder, 500 weeks. . . .

Unless otherwise indicated, all future statutory references are to the 1995–96 volume.

arm at the shoulder." We conclude that the court of appeals should have deferred to LIRC's reasonable interpretation. We also conclude that there is credible and substantial evidence supporting LIRC's determination that Hagen suffered only a scheduled permanent partial disability as a result of her injuries. Accordingly, we reverse the decision of the court of appeals.

¶ 2.    Hagen worked as a nurse's aide at the Hospital from 1979 until 1989. On May 5, 1989, while lifting a patient out of a wheelchair and into bed, Hagen felt a "pull" in her right arm, chest, and shoulder that resulted in immediate pain and difficulty in lifting objects. After reporting her injury to the Hospital, Hagen saw a number of physicians and pursued several months of treatment involving physical therapy, medication, and eventual surgery on her shoulder.

¶ 3.    Hagen filed a worker's compensation claim. At the hearing before the administrative law judge (ALJ), Hagen testified that she suffered from injuries to her arm, shoulder and upper back. Medical testimony and records supported her assertion. For example, Dr. James Logan testified as to Hagen's limited range of motion and pain in the shoulder and bicep area. He also stated that the poor posture produced by Hagen's injuries may eventually result in abnormal curvature of her spine. Dr. Diana Kruse, who performed surgery on Hagen's shoulder, concluded that she would:

> award an additional 5% wholeperson disability on the basis of the myofascial pain in the upper and mid back area. This is related to the shoulder girdle muscle attachments to the trunk and abnormal muscle tension in the upper, mid and low back areas

because of chronic pain that the patient experiences.

¶ 4. Other medical evidence suggested that Hagen's permanent partial disability was limited to injuries to the shoulder and arm. Dr. Panna Varia initially concluded that Hagen had a three percent total body disability due to right shoulder problems and the myofascial pain symptoms. However, after Dr. Kruse performed surgery on Hagen's shoulder, Dr. Varia changed her opinion, rating Hagen's permanent partial disability as seven percent at the shoulder joint.

¶ 5. The ALJ determined that Hagen's shoulder and arm injuries were scheduled injuries. The ALJ also found that Hagen's back injury was "very minor and not serious enough to serve as a basis for a loss of earning capacity claim." LIRC adopted the ALJ's factual determinations, with one modification not pertinent to our inquiry. In its memorandum opinion, LIRC found that "there is no doubt" that Hagen suffered both an arm and a shoulder injury. However, LIRC concluded that both were included in the PPD schedule under § 102.52(1), "[t]he loss of an arm at the shoulder."

¶ 6. As for Hagen's back injury, LIRC made the following finding of fact:

> [w]hile applicant may have occasional problems in areas beyond the shoulder these appear to be of a relatively acute, transient, nonpermanent nature. When compared to her shoulder and arm problems there is further doubt that any of these minor problems, *per se*, render applicant less employable. Rather it is the scheduled problems with applicant's shoulder and arm that are significant.

17

On that basis, LIRC determined that Hagen's back injury did not constitute an unscheduled permanent partial disability.

¶ 7. Hagen sought judicial review, and the circuit court affirmed LIRC's decision. Hagen appealed and the court of appeals reversed, concluding that LIRC's interpretation of § 102.52(1) was contrary to the plain meaning of the statute. While the court of appeals agreed with LIRC that Hagen suffered a scheduled arm injury, the court concluded that Hagen's shoulder injury was not covered by the § 102.52(1) PPD schedule. The court did not address LIRC's factual determination that Hagen suffered no permanent partial disability in areas beyond the arm and shoulder. LIRC, the Hospital, and the Insurer petitioned this court for review.

■

¶ 8. The first issue in this case is whether the § 102.52 provision covering "[t]he loss of an arm at the shoulder" includes an injury to the shoulder. Statutory interpretation is a question of law which a court generally reviews under a *de novo* standard. *Stockbridge School Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). However, a reviewing court will employ one of three levels of deference when considering an administrative agency's interpretation of a statute: no weight, due weight, or great weight. *See Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992).

■

¶ 9. Great weight deference to an agency's interpretation of a statute is appropriate when: (1) the agency is charged by the legislature with administering the statute; (2) the interpretation of the agency is one of long standing; (3) the agency employed its exper-

tise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995).

¶ 10.    Applying the four-factor test set forth in *Harnischfeger* to this case, we conclude that LIRC's interpretation of § 102.52(1) is entitled to great weight deference. First, the Department of Workforce Development (DWD)[3] is charged under Wis. Stat. § 102.14(1) with administering Chapter 102, and both the DWD and LIRC are charged with interpreting the statute and making factual findings when determining a claimant's entitlement to worker's compensation benefits.[4] Second, we note that DWD and LIRC have consistently interpreted the phrase "the loss of an arm at the shoulder" to include injuries to the shoulder.[5] Third, we conclude that DWD and LIRC employed their specialized knowledge in the areas of employment

---

[3] The Department of Workforce Development, also known as the Department of Industry, Labor and Job Development, was formerly known as the Department of Industry, Labor and Human Relations. *See* 1995 Wis. Act 289, § 275; 1995 Wis. Act 27, §§ 9130(4), 9430(5).

[4] It is LIRC's statutory interpretation and finding of fact that are reviewed on appeal. *See Langhus v. LIRC*, 206 Wis. 2d 493, 500, 557 N.W.2d 450 (Ct. App. 1996).

[5] *See, e.g., Kenyon v. Desmonds Formal Wear*, LIRC Nos. 87068133, 93033619, 1996 WL 166447 (Mar. 13, 1996); *Kennedy v. Knudsen Trucking, Inc.*, LIRC No. 980072723, 1994 WL 261276 (May 31, 1994); *Mouton v. City of Milwaukee*, LIRC No. 83–18738, 1989 WL 406726 (Apr. 13, 1989); *Snyder v. Walgreen Company*, LIRC No. 84–14863, 1987 WL 245991 (Aug. 25, 1987); *Thompson v. The Heil Company*, LIRC Nos. 79–58577, 77–07742, 1983 WL 143475 (Oct. 26, 1983).

injuries and compensation in arriving at the determination that shoulder injuries are scheduled under § 102.52. Finally, DWD and LIRC's interpretation provides uniformity in the application of § 102.52(1) to shoulder injuries.

¶ 11.    Having determined that great weight deference is the proper standard of review in this case, we will sustain LIRC's interpretation of § 102.52(1) unless it is unreasonable. *Lisney v. LIRC*, 171 Wis. 2d 499, 506, 493 N.W.2d 14 (1992). An agency's interpretation of a statute is unreasonable if it "directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise. . .without rational basis." *Lisney*, 171 Wis. 2d at 506.

¶ 12.    The court of appeals concluded, and Hagen asserts, that LIRC's interpretation of § 102.52(1), which includes her shoulder injury as a scheduled injury, directly contravenes the language of the statute, is unreasonable, and is without a rational basis. *Hagen v. LIRC*, 201 Wis. 2d 51, 57, 547 N.W.2d 812 (Ct. App. 1996). According to the court of appeals, the plain meaning of the § 102.52(1) phrase, "[t]he loss of an arm at the shoulder," unambiguously excludes shoulder injuries from the PPD schedule. The court reasoned that "at the shoulder" simply identifies the location at which the arm is lost, and that accepting LIRC's interpretation of the statute would essentially require a court to rewrite § 102.52(1) as "[t]he loss of an arm *and the shoulder*," rather than "[t]he loss of an arm *at the shoulder*." *Id.* at 60 (emphasis in original).

¶ 13.    While we conclude that the court of appeals' interpretation of § 102.52(1) is a reasonable one, we also conclude that it is not the only reasonable interpretation of § 102.52(1). As we stated in *Harnischfeger*:

The threshold question must be whether or not the statute in question is ambiguous. If the statute is ambiguous, an agency's interpretation cannot, by definition, be found to directly contravene it. It is axiomatic in this state that a statutory provision is ambiguous if reasonable minds could differ as to its meaning.

196 Wis. 2d at 662 (citations and footnote omitted). Reasonable minds can differ as to whether a shoulder injury is encompassed in the phrase "the loss of an arm at the shoulder." Because § 102.52(1) is ambiguous, we must determine whether LIRC's decision is based upon a reasonable interpretation of the statutory phrase.

¶ 14. LIRC's interpretation of § 102.52(1) views a shoulder injury largely in terms of its effect on the extent of an arm's usefulness. *See* Wisconsin Worker's Compensation Division, Department of Workforce Development Publication WKC–7761-P (R. 09/96), *How to Evaluate Permanent Disability*, 16–17, *cited in* Brief for LIRC at 15–16. Such an interpretation makes sense in light of the graduated compensation achieved by § 102.52, which increases worker's compensation benefits as the extent of the arm loss increases. In such a scheme, an injury at the shoulder will generally cause greater loss of use of the arm than an injury at the elbow. Like an elbow injury, a shoulder injury would be scheduled, as it is simply the point of origin from which the extent of the loss of the arm is measured.[6] We conclude that LIRC's interpretation of § 102.52(1) is a reasonable one, and will therefore sus-

---

[6] This is not to say that an impairment extending beyond the arm-shoulder area is wholly within the schedule, for a claimant may have a permanent partial disability with both a scheduled and an unscheduled component. *See Vande Zande v. DILHR*, 70 Wis. 2d 1086, 236 N.W.2d 255 (1975).

21

tain that interpretation under the great weight deference standard "even if an alternative is equally reasonable." *Harnischfeger*, 196 Wis. 2d at 663.

¶ 15. We reject Hagen's assertion that a "loss of use" interpretation of § 102.52(1) is "ridiculous." Appellant's Brief at 20. Employing analogy, Hagen asserts that it is absurd to suggest that a neck injury which caused pain or paralysis in the arm would be a scheduled injury because it would cause a "loss of use" of the arm, or that a back injury which caused paralysis of a leg would be scheduled because of the resultant "loss of use" of the leg. *Id.* Hagen's argument is flawed. The schedule contains no provision for "loss of an arm at the neck" or "loss of a leg at the back." We will not decide whether the "loss of use" interpretation may be reasonably applied to statutory phrases which do not exist. However, the statute does provide for "[t]he loss of an arm at the shoulder," and we conclude that a "loss of use" interpretation of that phrase is reasonable.

¶ 16. We determine that LIRC's interpretation of § 102.52(1) is not clearly contrary to the legislature's goal in enacting Chapter 102, which was to create "a system by which every employee not guilty of wilful misconduct may receive at once a reasonable recompense for injuries accidentally received in his [or her] employment under certain fixed rules, without a lawsuit and without friction." *County of La Crosse v. WERC*, 182 Wis. 2d 15, 31, 513 N.W.2d 579 (1994). In addition, the legislative history is silent on the meaning of "[t]he loss of an arm at the shoulder," because legislative drafting records were not kept at the time that § 102.52(1) was created. Thus, there is nothing to suggest that LIRC's interpretation of § 102.52(1) is "clearly contrary to legislative intent."

¶ 17. LIRC's interpretation of § 102.52(1) to include shoulder injuries is entitled to great weight deference. It is also reasonable. We therefore conclude that the court of appeals erred by substituting its interpretation of § 102.52(1), however reasonable, for that adopted by LIRC.

¶ 18. We turn next to a consideration of whether the evidence supports LIRC's factual determination that Hagen suffered only a scheduled permanent partial disability. A worker's compensation claimant with only a scheduled permanent partial disability is limited to the remedy provided in the § 102.52 schedule. *See* Wis. Stat. § 102.44(4). However, a permanent partial disability may have both scheduled and unscheduled components. The § 102.52 schedule is not exclusive when the effects of a scheduled impairment extend to and impair unscheduled parts of the body. *See Mednicoff v. DILHR*, 54 Wis. 2d 7, 15, 194 N.W.2d 670 (1972); *Wagner v. Industrial Comm'n*, 273 Wis. 553, 566, 79 N.W.2d 264 (1956).

¶ 19. Hagen asserts that in addition to her arm and shoulder injuries, she has suffered an unscheduled permanent partial disability to her back. However, LIRC made the factual determination that the pain that Hagen experienced beyond the shoulder-arm area was nonpermanent and did not render Hagen less employable. We will uphold LIRC's findings of fact if they are supported by "credible and substantial evidence." Wis. Stat. § 102.23(6); *see also Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169 (1983) (holding that "[e]vidence that is relevant, probative, and credible, and which. . .will permit a reasonable factfinder to base a conclusion upon it, is 'substantial' evidence").

¶ 20.  LIRC's determination is supported by Dr. Varia's report. Upon reviewing Hagen's post-surgery medical records, Dr. Varia concluded that the extent of Hagen's permanent partial disability was seven percent at the shoulder joint. We have already determined that Hagen's arm-shoulder injury is scheduled. Thus, Dr. Varia's conclusion negates the existence of a permanent partial disability beyond the arm-shoulder area.

¶ 21.  Dr. Varia's report is the only evidence in the record which supports LIRC's determination that Hagen did not suffer a permanent partial disability beyond the arm-shoulder area. The bulk of medical evidence in the record supports the opposite proposition that Hagen's pain beyond the arm-shoulder region constitutes an unscheduled permanent partial disability. However, we have previously rejected the notion that the evidence which would support LIRC's factual determinations must outweigh in quantity the evidence supporting a contrary determination. *See Princess House*, 111 Wis. 2d at 55. We will not "substitute [our] judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact." § 102.23(6). We conclude that, despite evidence supporting a contrary conclusion, LIRC's factual determination that Hagen suffered only a scheduled injury to her arm-shoulder area is a reasonable one based upon relevant, probative, and credible evidence.

¶ 22.  In summary, LIRC's interpretation of § 102.52(1) is entitled to great weight deference. LIRC has reasonably interpreted " [t]he loss of an arm at the shoulder" to include an injury to the shoulder. The court of appeals therefore erred in concluding that Hagen's shoulder injury was an unscheduled injury.

Finally, LIRC's determination that Hagen did not suffer a permanent partial disability beyond the arm-shoulder area is a finding of fact supported by credible and substantial evidence. Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.